ENTERPRISE SHEET METAL WORKS, Respondent, *v* SCHENDEL, Appellant.

(No. 3,906.)

(Submitted May 2, 1918.   Decided May 27, 1918.)

[173 Pac. 1059.]

*Corporations—Unpaid Stock Subscriptions — Recovery—Condition Precedent—Complaint—Insufficiency—Waiver.*

Corporations—Stock Subscriptions—Payment—Implied Condition.

1. When a subscription is made to the capital stock of a corporation the amount of which is specified in the charter, articles of incorporation, or in the contract of subscription, and there is nothing disclosing a contrary intention, the subscription is made upon the implied condition that the whole amount shall be subscribed before the subscriber may be lawfully called on to pay, except for the preliminary expenses.

[As to the liability to the corporation undertaken by subscribers to its stock, see note in 40 **Am. Dec.** 358.]

Same—Unpaid Stock Subscriptions—Action to Recover—Complaint.

2. The above rule not having been modified by statute in this state, the complaint in an action by a corporation to recover an unpaid stock subscription is fatally defective if it does not disclose that all the capital stock has been subscribed.

Same—Complaint—Insufficiency.

3. The allegation that plaintiff was duly incorporated under the laws of the state by the subscribers to the subscription contract in pursuance of the terms thereof was not a sufficient averment that all the conditions of the contract had been fulfilled, but meant only that the corporation had gained a legal status to commence business if all the stock had been subscribed, or, if not, to solicit subscribers or sell shares.

Same—Unpaid Stock Subscriptions—Payment—Rule—Modification.

4. The settled rule of law that a subscriber to the capital stock of a corporation cannot be compelled to pay unless the whole amount shall have been subscribed is susceptible of annulment or modification by express provision of statute only.

Contracts—Conditions Precedent—Pleading.
     5.  In declaring upon a contract containing conditions precedent, a party may, under section 6572, Revised Codes, allege generally that he has performed all the conditions on his part, provided he couch the allegation in the terms of the statute or in terms equivalent thereto.

Corporations—Unpaid Stock Subscriptions—Waiver.
     6.  Since a "waiver" is the intentional relinquishment of a known right, acceptance of corporate stock subscribed for without knowledge that all of the stock had not been taken was not a waiver of the condition precedent requiring subscription of all the stock before liability attached.

Same—Implied Waiver—What Constitutes.
     7.  While a waiver may be implied by the conduct of the party against whom it is alleged, the circumstances must be such as to furnish the basis for an inference of knowledge and intention to forego the right which he might have asserted.

Same—Unpaid Stock Subscriptions—Recovery—Rule—Modification.
     8.  *Held,* that the contention that section 3825, Revised Codes, as amended (Laws 1909, p. 148); section 1, Chapter 94, Laws 1909, p. 124; sections 3818 and 3889, Revised Codes, as amended (Laws 1915, Chap. 88); and sections 3829, 3840, 3867 and 3897, Revised Codes, have in effect modified the general rule requiring that the whole amount of the capital stock of a corporation must be subscribed before a subscriber may be called upon to pay, has no merit, and that the general rule, therefore, is controlling in this state.

*Appeal from District Court, Yellowstone County; A. C. Spencer, Judge.*

ACTION by the Enterprise Sheet Metal Works against Robert E. Schendel.  From a judgment for plaintiff and an order denying a new trial, defendant appeals.  Reversed and remanded, with leave to amend.

*Messrs. Waldo & Cunningham,* for Appellant, submitted a brief; *Mr. Wm. B. Waldo* argued the cause orally.

One who signs, as defendant did, a subscription paper by which he agrees to take stock in a corporation thereafter to be formed, may withdraw his subscription at any time before the corporation is formed.  So-called subscriptions to the capital stock of a corporation not yet formed are merely offers to subscribe.  (*Deschamps* v. *Loiselle,* 50 Mont. 565, 148 Pac. 335, 337; *Bryant's Pond Steam Mill Co.* v. *Felt,* 87 Me. 234, 47 Am. St. Rep. 323, 33 L. R. A. 593, 32 Atl. 888; *Planters' & M. Ind. Packet Co.* v. *Webb,* 156 Ala. 551, 16 Ann. Cas. 529,

46 South. 977, 978; *Hudson R. E. Co.* v. *Tower,* 156 Mass. 82, 32 Am. St. Rep. 434, 30 N. E. 465; *Midland City Hotel Co.* v. *Gibson,* 11 Ga. App. 829, 76 S. E. 600.) Notice of withdrawal may be given to another subscriber prominent in the enterprise or who is in charge of subscription paper. (*Planters' & M. Ind. Packet Co.* v. *Webb,* 156 Ala. 551, 16 Ann. Cas. 529, 46 South. 977; *Hudson R. E. Co.* v. *Tower,* 161 Mass. 10, 42 Am. St. Rep. 379, 36 N. E. 680.) If the offer be not withdrawn, it will ripen into a binding contract when the corporation comes into being and accepts it. (1 Thompson on Corporations, secs. 521, 543.)

It is held that when the subscription paper specifics the amount of the capital stock of the proposed corporation [and this one does], subscription of the full capital is a condition precedent to liability of any of the signers. (*Salem Mill Dam Corp.* v. *Ropes,* 23 Mass. (6 Pick.) 23; *Livesey* v. *Omaha Hotel Co.,* 5 Neb. 50; *Stearns* v. *Sopris,* 4 Colo. App. 191, 35 Pac. 281; *Atlantic Cotton Mills* v. *Abbott,* 9 Cush. (Mass.) 423; *Santa Cruz R. R. Co.* v. *Schwartz,* 53 Cal. 106; *Rockland etc. Co.* v. *Sewall,* 78 Me. 167, 3 Atl. 181.)

When the articles of incorporation are required to state the amount of capital stock and the number of shares into which it is divided, and our law so requires, full subscription of the amount of the capital stock is a condition precedent to liability of any subscriber. (*Morgan* v. *Landstreet,* 109 Md. 558, 130 Am. St. Rep. 531, 16 Ann. Cas. 1247, 72 Atl. 399; *Haskell* v. *Worthington,* 94 Mo. 560, 7 S. W. 481; *International F. & E. Co.* v. *Walker,* 88 Mich. 62, 49 N. W. 1086; *Exposition etc. Co.* v. *Canal St. etc. Co.,* 42 La. Ann. 370, 7 South. 627; *Temple* v. *Lemon,* 112 Ill. 51, 1 N. E. 268.)

Waiver must be pleaded, and knowledge, being an essential element thereof, must be averred. (*Seebach* v. *Kuhn,* 9 Cal. App. 485, 99 Pac. 723; *List & Son Co.* v. *Chase,* 80 Ohio St. 42, 17 Ann. Cas. 61, 88 N. E. 120; *Symms-Powers Co.* v. *Kennedy,* 33 S. D. 355, 146 N. W. 570; *J. I. Case Thresher M. Co.*

v. *Loomis,* 31 N. D. 27, 153 N. W. 479; *Poheim* v. *Meyers,* 9 Cal. App. 31, 98 Pac. 65.)

*Messrs. Reynolds & Derry,* for Respondent, submitted a brief; *Mr. F. B. Reynolds* argued the cause orally.

Respondent does not concede appellant's contention that subscription to the full amount of the capital stock is such an implied condition precedent, but even though such contention should prevail, yet this requirement is satisfied by an allegation that the corporation was "duly incorporated." (*McKay* v. *Elwood,* 12 Wash. 579, 41 Pac. 619; *Milwaukee Brick etc. Co.* v. *Schoknecht,* 108 Wis. 457, 84 N. W. 838; *Inter-Mountain Pub. Co.* v. *Jack,* 5 Mont. 568, 6 Pac. 20.)

The promise to pay is absolute and is not in any sense dependent upon the full amount of the capital stock being subscribed. It must be presumed that the defendant knew the law relative to the organization of corporations as set forth in the statutes of the state, and that the subscription agreement must be construed in the light of the fact that the corporation could be organized and commence business with any portion of the capital stock having been subscribed. Such being the case, the subscription agreement must be construed as an absolute promise to pay upon the demand of the treasurer after the organization of the company, even though the full amount of the capital stock had not been subscribed, so long as no such condition was expressly attached to the promise to pay. (See *West* v. *Crawford,* 80 Cal. 19, 21 Pac. 1123.)

Where the statute authorizes the organization of a corporation upon subscription of less than the whole amount of the proposed capital stock, the rule requiring the subscription of the whole amount does not apply. (*Schloss* v. *Montgomery Trade Co.,* 87 Ala. 411, 6 South. 360; *San Bernardino Inv. Co.* v. *Merrill,* 108 Cal. 490, 41 Pac. 487; *Auburn Opera House etc. Assn.* v. *Hill,* 3 Cal. Unrep. 839, 32 Pac. 587; *Lincoln Shoe Mfg. Co.* v. *Sheldon,* 44 Neb. 279, 62 N. W. 480; *Astoria etc. R. Co.* v. *Hill,* 20 Or. 177, 25 Pac. 379; *Port Edwards etc. R. Co.* v.

*Arpin,* 80 Wis. 214, 49 N. W. 828; *Milwaukee Brick etc. Co.*
v. *Schoknecht,* 108 Wis. 457, 84 N. W. 838.)

"The acceptance of the stock and the payment of the assess-
ment thereon is a waiver of the objection that otherwise might
have been urged upon the ground that all the shares had not
been taken, if such was the fact." (*Inter-Mountain Pub. Co.*
v. *Jack, supra.*)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

Action to recover of the defendant $1,000, the par value of ten
shares of its capital stock upon a subscription contract there-
for.   The complaint alleges: That on or about May 28, 1913, the
defendant and other persons agreed to form a corporation to
conduct a sheet metal business, and for that purpose signed
the following agreement:

"We, the undersigned, in consideration of the mutual prom-
ises herein contained do hereby severally subscribe for the num-
ber of shares of the capital stock of the Enterprise Sheet Metal
Works, a corporation proposed to be organized under the laws
of the state of Montana, with a capital stock of $30,000, of
the par value of $100 per share, and promise to pay therefor in
cash, except as hereinafter provided, upon the demand of the
treasurer of said proposed corporation after the organization
thereof.

"The undersigned, H. B. Stridiron and John Sadring have
heretofore been engaged in business as a partnership under the
firm name of Enterprise Sheet Metal Works, and as such part-
ners are joint owners of considerable personal property con-
sisting of stock on hand, tools and machinery, bills receivable,
accounts receivable, and a certain patent for the manufacture
and sale of a certain flume, the equity in which H. B. Stridiron
and John Sadring value at the sum of $15,000.

"It is mutually agreed by and between the subscribers hereto
that all said personal property shall be turned over by said H.
B. Stridiron and John Sadring to said proposed corporation,

subject to their partnership indebtedness in payment of the stock hereinafter subscribed for by them and the same shall be received by said proposed corporation in full payment of 150 shares of the stock of said proposed corporation.''

That defendant subscribed for ten shares of the stock of the corporation to be formed; that thereafter ''the plaintiff was duly incorporated under the laws of the state of Montana by the subscribers to said subscription contract, in pursuance with the terms thereof''; that it ever since has been and now is engaged in the sheet metal business; that as such corporation the plaintiff succeeded to and acquired all the rights of said subscribers and each of them to the amount for which they subscribed; that plaintiff has issued its stock to its subscribers; that it ''has issued and delivered to defendant ten shares  *  *  * in accordance with his said subscription contract, and that the same has been accepted by him; that he has refused to pay for the same or any part thereof, though the treasurer of the plaintiff has repeatedly demanded payment.'' Judgment is demanded for $1,000, the subscription price, with interest thereon from April 25, 1915. The defendant interposed a general demurrer, which was overruled. Thereafter issues were joined by defendant's answer and plaintiff's reply thereto, a trial of which resulted in a judgment in favor of plaintiff. From this judgment and an order denying him a new trial, defendant has appealed.

The principal contention made by counsel is that the complaint does not state a cause of action. The argument is that subscriptions for the entire amount of the capital stock of plaintiff specified in the contract and in the articles of incorporation is a condition precedent which must have been fulfilled before the defendant became liable, and that, since the complaint contains no allegation of the amount that has been subscribed, nor any allegation that any of it other than that of the defendant has been subscribed for, it is fatally defective.

The rule is well established that, when a subscription is made **[1]** to the shares of the capital stock of a corporation the

amount of which is specified in the charter, articles of incorporation, or in the contract of subscription, and there is nothing disclosing a contrary intention, the subscription is made upon the implied condition that the whole amount shall be subscribed before the subscriber may be lawfully called on to pay for the shares contracted for or any assessment thereon, except for the preliminary expenses. (*Morgan* v. *Landstreet,* 109 Md. 558, 130 Am. St. Rep. 531, 16 Ann. Cas. 1247, and cases cited in note, 72 Atl. 399; 1 Thompson on Corporations, sec. 613; 7 R. C. L., p. 232, sec. 205; Morawetz on Corporations, sec. 146; Cook on Stock and Stockholders, sec. 176; 10 Cyc. 493.)    The reason for the rule is stated by the authorities in varying terms, but in substance they are all in accord. In *Stoneham etc. R. Co.* v. *Gould,* 2 Gray (Mass.), 277, the court said: "It is a rule of law too well settled to be now questioned that when the capital stock and the number of shares are fixed by the act of incorporation or by any vote or by-law passed conformably to the act of incorporation, no assessment can be lawfully made upon the shares of any subscriber until the whole number of shares has been taken.   *   *   *   This is no arbitrary rule; it is founded on a plain dictate of justice, and the strict principles regulating the obligation of contracts.   When a man subscribes a share to a stock, to consist of 1,000 shares, in order to carry on some designated enterprise, he binds himself to pay a thousandth part of the cost of such enterprise.   If only 500 are subscribed for, and he can have no assurance which he is bound to accept that the remainder will be taken, he would be held if liable to assessment, to pay a five-hundredth part of the cost of the enterprise, besides incurring the risk of entire failure of the enterprise itself, and the loss of the amount advanced toward it."

In *Livesey* v. *Omaha Hotel Co.,* 5 Neb. 50, the reason is stated thus: "The rule seems to be well established that, when the charter or subscription contract specifically fixes the capital stock at a certain amount, divided into shares of a certain amount each, the whole amount of capital so fixed and required

for the accomplishment of the main design of the company must be fully secured by a *bona fide* subscription before an action will lie upon the personal contract of subscribers to stock to recover an assessment levied on the shares of stock, unless there is some clear provision in the contract to proceed in the execution of the main design with a less subscription than the whole amount of capital specified. This rule seems to be founded on the principle that by the terms of the grant to the corporation it is essential to the power of assessment for the general objects and purposes of the institution that the whole capital stock required by the condition precedent must be represented and acted upon by the assessment."

In some states there are statutes which expressly provide that [2] assessments may be made or the purchase price demanded when a certain fractional part of the entire amount has been taken. (*San Bernardino Inv. Co.* v. *Merrill,* 108 Cal. 490, 41 Pac. 487; *Anvil Min. Co.* v. *Sherman,* 74 Wis. 226, 4 L. R. A. 232, 42 N. W. 226; 7 R. C. L. 205; 1 Thompson on Corporations, sec. 615.) Such statutes are held to modify the general rule so that each subscriber is presumed, when he subscribes, to give his consent to become liable when the corporation has been organized and subscriptions have been made to the required fractional amount of the entire stock. (7 R. C. L. 205.) But, whether the general or modified rule applies, the complaint or declaration does not disclose a liability unless it alleges facts showing that the condition precedent has been fulfilled; in other words, under the general rule, that all the capital stock has been subscribed, or, under the modified rule, that the fractional part has been subscribed. (*Livesey* v. *Omaha Hotel Co.* and cases last cited *supra.*) The general rule has not been modified by statute in this state. Tested by it, the complaint in this case is wholly insufficient and the demurrer should have been sustained.

Counsel for plaintiff insist that the allegation that "plaintiff was duly incorporated under the laws of the state of Montana

[3]  by the subscribers to said subscription contract, in pursuance with the terms thereof," is a sufficient averment that all the conditions of the contract have been fulfilled. With this contention we do not agree. The allegation that the corporation was duly organized means no more than that articles of incorporation were formulated and record made of them with the proper officers as required by the statute (Rev. Codes, sec. 3825, as amended by Acts 1909, p. 148)—in other words, that the corporation has gained a legal status for one of two purposes; that is to say, if the capital stock has all been subscribed, the corporation at once acquires the capacity to enter upon the accomplishment of its main enterprise. If only formative shares have been taken by the persons effecting the organization, legal capacity has been acquired for no other purpose than to solicit subscribers, or to sell shares in order to secure the capital to carry out the main enterprise. "Organization, unlike the power to do business, does not necessarily contemplate the incurring of debts nor make available capital a necessity, and there seems to be no reason for relaxing the rule that liability on a subscription is conditional upon all the stock being taken simply because the corporation may organize before this." (7 R. C. L., p. 232, sec. 205.) The fact that several provisions of the Code, referred to later, imply that organization may be [4]  effected prior to subscription for all the stock, does not require the conclusion that the legislature intended to set aside, annul or modify a settled rule of law founded upon a "plain dictate of justice and the strict principles regulating the obligations of contracts." In our opinion, nothing short of an express provision on the subject would suffice to accomplish this. The modifying phrase, "in pursuance with the terms thereof," is a mere bald conclusion. True, the statute (Rev. [5]  Codes, sec. 6572) permits a party in declaring upon a contract containing conditions precedent to allege generally that he has performed all the conditions on his part. In order to avail himself of this permissive provision, however, the pleader must couch his allegation in the terms of the statute

or in terms substantially equivalent. (*Ivanhoff* v. *Teale*, 47 Mont. 115, 130 Pac. 972.)

Counsel contend that the allegation of a delivery of his [6] stock to the defendant and his acceptance of it is sufficient to obviate the necessity of alleging that all the stock has been subscribed. By this contention counsel seek to invoke the doctrine of waiver. This term is defined as "the intentional relinquishment of a known right." (Anderson's Dictionary.) "There can be no waiver unless the person against whom the waiver is claimed had full knowledge of his rights and of facts which will enable him to take effectual action for the enforcement of such rights. No one can acquiesce in a wrong while ignorant that it has been committed, and that the effect of his action will be to confirm it. To constitute a waiver on the part of one party to a contract of the performance of the contract on the part of the other party, it must be shown that the party alleged to have waived his rights had knowledge of what the other party had done contrary to the terms of the contract and what part thereof he had failed to perform; and if the contract is affirmed in ignorance of facts by which it is invalidated, there is no waiver of the right to rescind. * * * The burden of proving knowledge is on one who relies upon a waiver, and such knowledge must be plainly made to appear. Certainly a presumption of waiver cannot be rested on a presumption that the right alleged to have been waived was known." (29 Am. & Eng. Ency. of Law, 2d ed., 1093–1095.)

To make the principle invoked available to plaintiff, therefore, it was incumbent upon it to allege facts showing knowledge by defendant that all the stock had not been subscribed, and that, having this knowledge, he nevertheless accepted that for which he had subscribed. The allegation in question falls short of this requirement; for it implies no knowledge as to how much of the stock had been subscribed. Indeed, it showed nothing further than that the defendant had agreed to take [7] ten shares and did take them. It is true that a waiver may be implied by the conduct of him against whom it is al-

leged; but the circumstances must be such as to furnish the basis for an inference of knowledge and intention to forego the right which he might have asserted. Such a case is not made out by the complaint.

In support of their contention in this behalf counsel cite the case of *Inter-Mountain Pub. Co.* v. *Jack,* 5 Mont. 568, 6 Pac. 20. That was an action to recover an assessment on shares of the capital stock of the plaintiff. The territorial court held that an allegation in the complaint that the defendant had accepted the shares and made payment of one assessment thereon was sufficient to show a waiver by him of his objection made by general demurrer that all the shares had not been taken. In our opinion, the court was in error, in that it did not appear from the complaint that the acceptance and payment were made by defendant with knowledge that all the shares had been taken. Even so, it is distinguishable from this case in that it is alleged in the complaint here that the defendant has repeatedly refused payment.

Counsel admit that the general rule governing stock sub-
[8]   scriptions applies in the absence of legislation modifying it, but insist that several provisions of the Codes relating to corporations have in effect done this, so that it now has no application in this jurisdiction. These provisions are: Amended section 3825, Laws 1909, p. 148; section 1, Chapter 94, Laws 1909, p. 124; amended sections 3818 and 3889, Laws 1915, Chapter 88; and sections 3829, 3840, 3867 and 3897. But none of them sustain the contention. To take them up and subject them to a critical examination would accomplish no beneficial result. It is sufficient to say of them that they contain no provision declaring what portion of the capital stock much be subscribed before the corporation is authorized to begin business. It is true that section 1, Chapter 94, Laws of 1909, *supra,* declares that the certificate issued by the secretary of state, as prescribed by amended section 3825, shall be *prima facie* evidence of the corporate character and capacity of the corporation and of its right to do business in this state; but this pre-

sumes a corporation with capital subscribed under the condition precedent implied by the general rule, or in accordance with an agreement had by the subscribers either at the time they made their subscriptions or thereafter when they conceived that the corporation could successfully carry on the business for which it was organized with the amount of capital stock subscribed. At best, these provisions, taken together with the others cited, which have to do with the mode of levying assessments, the holding of meetings, the method of voting, *etc.*, mean nothing more than that the legislature enacted them to enable the subscribers to fix by convention among themselves the amount of capital stock necessary to enable the corporation to begin business. They do not imply that every corporation after subscription has been obtained in any number of shares less than the whole specified in the articles may engage in the enterprise for which it was organized. Nor, we think did it intend to enable or permit a corporation to deal with the public in an attempt to accomplish its main enterprise, until it has at its command a sufficient capital to warrant a reasonable expectation of its success. True, amended section 3825 permits three or more persons who have taken a nominal amount of stock to perfect an organization. But, as we have said above, the legal status thus acquired must be understood to be limited to preliminary work of securing capital by the co-operation of others; otherwise the *prima facie* capacity evidenced by the certificate of the secretary of state would be the warrant for the perpetration of gross fraud upon the public, rather than for the conduct of some legitimate business enterprise.

The judgment and order are reversed, and the cause is remanded, with leave to plaintiff to amend the complaint if it desires to do so.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.