HERMAN I. BERMAN

*vs.*

THE FRATERNITIES HEALTH AND ACCIDENT ASSOCIATION.

Androscoggin.    Opinion December 13, 1910.

*Insurance.    Health Insurance.    Action on Policy.    False Answers.    Forfeiture. "Waiver" of Forfeiture.*

In an action on a policy of health insurance to recover sick benefits evidence *held* to show that plaintiff's answers to questions in the application as to his health for the last five years, as to his consulting physicians, and as to his having had certain diseases were not true, full, and complete, so as to work a forfeiture of the policy under a provision in the application, made a part of the policy that, if any of the statements, representations, or answers made in the application, were not "true, full, and complete," all rights to the benefits named in the policy should be void.

Under the provision as to the truth of insured's answer, truth in fact was required, and that an answer which was in fact untrue was given by him for the truth according to his belief or understanding could not avoid a forfeiture thereunder.

In an action to recover sick benefits under a policy of health and accident insurance, evidence *held* not to justify a finding that the insurer's agent at the time of making out the application knew the truth as to insured's previous good health, his consulting of physicians, and as to certain diseases which he had had, which insured misrepresented in his answers to questions in the application, so as to work an estoppel against the insurer to claim a forfeiture under a provision of the application, made a part of the policy that, if any of insured's statements in the application were not true, benefits under the policy should be forfeited.

A waiver is the voluntary relinquishment of some known right, benefit, or advantage which the party otherwise would have enjoyed, it being essentially a matter of intent, and, when the only proof of that intent rests in what a party does or forbears to do, his acts or omissions should be so manifestly indicative of an intent to voluntarily relinquish a then known particular right or benefit that no other reasonable explanation is possible, full knowledge of all the material facts that establish such right being necessary, and so that, where a health policy provided that the insured should pay in advance without notice his specified assessments, the insurer, which had no information of facts, establishing a forfeiture of the policy except what it had acquired from its investigations, after his proof of claim for benefits was presented, and which turned the claim over to its attorney for investigation, did not waive the forfeiture by receiving in the ordinary course of business, and receipting for, two monthly assessments during the period of the investigation, and before all the material facts had been acquired, showing that the insured's answers in his application were untrue, insured knowing when he voluntarily made the payments that his claim had been turned over to the company's attorney.

On exceptions by plaintiff. Overruled.

Action of assumpsit brought to recover the sum of $167 as sick benefits under a policy of insurance issued to the plaintiff by the defendant. Plea, the general issue with brief statement as follows: "That by the terms of the contract in suit, if any of the statements, representations or answers made in the application for said contract were not true, full and complete, all rights to benefits thereunder were null and void; and the defendant says that the answers to the first, second, third, fourth, eighth and ninth questions contained in the application for said contract were not true, full and complete;

"That further, by the terms of the contract in suit, attempts by fraud or concealment to obtain benefits rendered the contract or policy null and void; and the defendant says that the answer of said plaintiff to question 14, in the proof of claim filed by him, was untrue, and was an attempt by fraud and concealment to obtain benefits to which he was not entitled."

At the close of the evidence the presiding Justice ordered a verdict for the defendant and the plaintiff excepted.

The case is stated in the opinion.

*Jacob H. Berman*, for plaintiff.

*Harry Manser*, for defendant.

SITTING: EMERY, C. J., SAVAGE, PEABODY, CORNISH, KING, JJ.

KING, J. Action to recover sick benefits under a policy of health and accident insurance. At the close of the evidence the presiding Justice directed a verdict for the defendant.

In the plaintiff's application for the policy made January 13, 1908, it was stipulated "That if any of the statements, representations, or answers made herein are not true, full and complete, all rights to the benefits named in my policy shall be null and void, and all money paid by me to the Association forfeited." In the policy of insurance it is stipulated that it is issued "In consideration of the payment of the application fee and the statements, agreements and warranties in the application for a policy, which is made a part of this contract."

Among the questions and answers contained in the application are the following:

2. Have you been in good health for the last five years?

Ans. Yes.

3. Have you consulted, been prescribed for or required the services of a physician or surgeon during the past five years? If so, give date, and state particulars, name and address of attending physician.

Ans. Went to Dr. Cummings of Lewiston for advice on being nervous.

4. Have you ever had (here were named several diseases and infirmities, including "nervous prostration")? Ans. No.

The evidence establishes with unquestionable certainty that the plaintiff was afflicted with nervous prostration for a considerable period of time during the summer of 1907. In the early part of July of that year Dr. E. S. Cummings, of Lewiston, examined him and found him suffering from nervous prostration and unfit to attend to his business. On July 15, 1907, he consulted Dr. Addison S. Thayer, of Portland, and also on August 2nd, Aug. 12th and Sept. 5th, 1907. Dr. Thayer says: "By my advice he began at once a rest cure, at Old Orchard, which was prolonged until September 6th." Dr. Cummings, on Oct. 24, 1907, certified under oath that the plaintiff "after leaving the care of Dr. Addison S. Thayer of

Portland was under my care from Sept. 7th to Sept. 30th and unable to attend to his business." With reference to the plaintiff's condition in Sept., 1907, when he came back to Dr. Cummings, the Doctor was asked—"Whether the disease from which Mr. Berman was suffering on September 7th 1907 was nervous prostration?" to which he replied—"Well, it was—you say at that time, 1907? At that time he was recovering." But he added that he was not then fit to do business and that condition continued till Sept. 30, 1907. July 17, 1907, Jacob Judelsohn, a brother-in-law of the plaintiff, at his direction, wrote from Portland to the Secretary of the Order of Knights of Golden Eagle, as follows: "Mr. H. I. Berman of Lewiston, Me., is ill here. Dr. Addison Thayer of this city has ordered him to keep away from business as he is too ill to attend same." From this Order of Knights of Golden Eagle the plaintiff received benefits for sickness from July 15th to Sept. 30, 1907, to the amount of $40. From the Order of Knights of Pythias the plaintiff received, Oct. 31, 1907, $37.50 "on account of 10 weeks sick benefits" during that summer. The plaintiff also made application to the Preferred Accident Insurance Company of New York, in which he was insured, for benefits for sickness for 11 weeks from July 14 to Sept. 30, 1907, and received from that company the sum of $137.50 therefor. He also received benefits for the same sickness from the Order of Beth Abraham the amount of which he did not state.

It is of consequence, we think, to note that the illness for which the plaintiff seeks to recover in this action according to his proof of claim was "complete mental and nervous prostration," on account of which he was wholly disabled from May 28 to Sept. 21, 1908, and that he was "at the New England Sanitarium, Melrose, Mass., for treatment about 3 months more or less." In his proof of claim, in answer to the inquiry if he had been afflicted with the same disability before, he said: "Had a slight attack similar but not exactly like this a year ago."

In view of the foregoing facts, about which there is no question, the conclusion is irresistible that the plaintiff's answers and statements to questions 2, 3 and 4, at least, in his application were manifestly and palpably "not true, full and complete."

If it were a fact, as claimed by the plaintiff at the trial, but which seems incredible, that at the time of his application he was sincere and believed his answers were true, full and complete, that fact could not save him from the forfeiture stipulated by him to be the effect if they were not true, full and complete in fact. His express stipulation that his answers were true called for truth in fact, and not for truth according to his belief or understanding. *Johnson* v. *Insurance Co.*, 83 Maine, 182.

But the plaintiff contends that the information which he gave to the defendant's agent, who was present when he filled out the application, and the advice and suggestions made by the agent with respect to his answers, estops the defendant from setting up the falsity of those answers. He invokes the well settled doctrine, that an insurance company is bound by the knowledge which its agent has of the risk and of all matters connected therewith, and that omissions and misdescriptions known to the agent shall be regarded as known by the company, and waived by it.

This contention, however, is not supported in fact. The evidence is altogether too weak to justify a finding in fact that the defendant's agent had such knowledge of the truth, which the plaintiff in his answers denied, and of the essential facts, which he did not disclose in his answers, as would work an estoppel against the defendant.

As to his answer to question 2, that he had been in good health for the preceding five years, he claims that he said to the agent: "I have been a little mite under the weather for two weeks," and that when he told the agent he was fully recovered the latter told him to answer the question, Yes. As to his answer to question 3, respecting his consulting physicians, he stated in cross-examination that he told the agent he consulted Dr. Thayer also, and that the agent told him it was unnecessary to put that in his answers, saying: "It isn't necessary; you have got Cummings in there; it is for them to find out and not to tell them." This statement attributed to the agent, especially the last clause, is so out of harmony with a proper discharge of his duty that it seems incredible. The agent denies it. The plaintiff does not claim that he told the agent that he had nervous prostration during the summer of 1907; that he

was under the care of Dr. Thayer from July 15th, to Sept. 6th, after which he was under the care of Dr. Cummings till Sept. 30th, during which time he was too ill to attend to his business; nor that he himself had applied for and accepted sick benefits from three fraternal orders and one health insurance company exceeding in amount $200, for total disability during that period. The only statement which he claims to have made to the agent in respect to his previous health, that he had *"been a little mite under the weather for two weeks,"* was not only false in spirit but manifestly calculated to mislead and deceive the agent.

At the trial the plaintiff deliberately asserted that during the summer of 1907 he was not sick but in good health, notwithstanding the convincing and overwhelming evidence to the contrary which was pressed upon him. His claim now, that at the time of his application he disclosed to the agent enough about the facts of his sickness in the summer of 1907 to charge the defendant with knowledge of the truth of it, is so utterly inconsistent with the fact that he denied the truth of it in his application, and persisted in that denial at the trial, that it becomes unreasonable and incredible.

Lastly, the plaintiff claims, admitting that by reason of his false and incomplete answers he had forfeited all his rights and benefits under the policy, that the defendant waived that forfeiture by accepting payments of his monthly assessments of $1.25 each for November and December, 1908. We think this claim is not sustainable. A waiver is the voluntary relinquishment of some known right, benefit or advantage and which, except for such waiver the party otherwise would have enjoyed. *Stewart* v. *Leonard*, 103 Maine, 132. It is essentially a matter of intention; and when the only proof of that intention rests in what a party does or forbears to do his acts or omissions to act relied upon should be so manifestly consistent with and indicative of an intention to voluntarily relinquish a then known particular right or benefit that no other reasonable explanation of his conduct is possible. Unless one is shown to have full knowledge of all the material facts that establish his right he cannot be held to have waived it.

Applying this test it will readily be found that the evidence in the case at bar is not sufficient to justify a finding that the defendant waived the plaintiff's forfeiture. The policy provided that the assured should pay in advance, without notice, the regular monthly assessment of $1.25 "and upon failure to make such payment the policy shall lapse." The defendant did receive from the plaintiff his November and December assessments, and in the usual course of its business receipted for them. But in order to find that the defendant's act in receiving and receipting for those assessments was a waiver of its right to set up, in defense of the plaintiff's claim, a forfeiture of all rights under the policy, it should clearly appear that at the time the assessments were received the defendant had full knowledge of all the material facts, and then knew that such a forfeiture existed in fact, and intended to waive it.

What are the facts and circumstances? The defendant had no information of facts that established a forfeiture of the plaintiff's policy except what it acquired from its investigations after his proof of claim for sick benefits was presented to it. He gave them no such information but persisted that his answers and statements were true, even at the time of the trial. Oct. 24, 1908, the defendant wrote the plaintiff that it received the certificate of Dr. Bliss the day before and "we will now give the matter prompt attention." Oct. 30, 1908, the defendant received a letter from Dr. Thayer, in answer to its inquiry, in which the Doctor said : "Mr. Berman came to me July 15th 1907. At that time he was suffering from dizziness, confusion of mind, forgetfulness, and certain physical signs of nervous exhaustion. By my advice he began at once a rest cure, at Old Orchard, which was prolonged until Sept. 6th." Nov. 5, 1908, the defendant wrote the plaintiff that it had referred the matter of his claim to its attorney upon whom he could call in regard to it. It appears from the testimony of the president of defendant company that the matter of the validity of the plaintiff's policy was under special investigation by the company after his proof of claim was made. He said : "We waited until we had a chance to examine what we thought was all of the evidence we could reasonably get. When we thought that we had arrived at a conclusion which justified

us in thinking that the claim was not a proper one and that it had elements which seemed to us to appear in it, we then cancelled the policy." On Dec. 21, 1908, the defendant wrote the plaintiff that it had decided to cancel his policy.

The plaintiff now claims that upon receipt of Dr. Thayer's letter, Oct. 30, 1908, the defendant had knowledge of the material facts upon which a forfeiture of the policy depended. The Thayer letter, however, did not disclose all the material facts which show that the plaintiff's answers were false and incomplete; and it is to be borne in mind that the plaintiff contended at the trial that he gave the defendant's agent substantially the information which the Thayer letter contained. But if the information given by Dr. Thayer justifies a conclusion that the plaintiff had made a false answer in his application, it by no means follows that the defendant was bound to cease further investigation of the truth, and was then required to choose between a waiver and a forfeiture. It was entitled to a reasonable time, at least, for investigation until the truth was discovered and the evidence ascertained that would establish it.

The defendant's president testified that after the receipt of the Thayer letter other information touching the matter was obtained, and that they were waiting to ascertain what the statement of its agent was, who was away and "returned on the 11th of December." The truth as to the character and extent of the plaintiff's sickness during the summer of 1907, and his own conduct in applying for and receiving sick benefits therefor, as disclosed by the evidence in this case, was not easily ascertainable outside of those who were interested to conceal it.

The plaintiff's false and incomplete answers made all his rights and benefits under the policy "null and void" according to the express provisions thereof. It is inconceivable that the defendant, with full knowledge of all the facts which established such a forfeiture, could have had an intention to waive it. Certainly such an intention is not to be inferred from the fact that two assessments of $1.25 each were receipted for by the company in its usual course of business, and which the plaintiff voluntarily paid after he knew his claim had been turned over to the company's attorney, and must

have understood it was being investigated.  See *Prenster* v. *S. C. of O. of Chosen Friends*, 135 N. Y. 417, a case closely analogous to the case at bar.

In the opinion of the court the evidence is plenary that the plaintiff's rights and benefits under the policy were forfeited and became null and void by reason of his false and incomplete answers in his application therefor, and that the evidence is not sufficient to support a finding that there was any waiver of the forfeiture on the part of the defendant.  Accordingly the ruling of the presiding Justice directing a verdict for the defendant was correct.

*Exceptions overruled.*