## 21039.   STAPLETON *v.* DISMUKES.

612

Decided July 20, 1931.

*M. A. Walker, W. W. Dykes,* for plaintiff in error.
*R. R. Marlin, G. Y. Harrell,* contra.

BELL, J. This was a trover suit brought by F. S. Dismukes against R. L. Stapleton, a warehouseman, to recover four bales of cotton. The defendant filed an answer in which he denied all the allegations of the plaintiff's petition as to title and conversion, and further averred "that all the cotton plaintiff had in the warehouse which was being operated by this defendant was sold by plaintiff, and he was paid for same quite a little while before the date stated in his petition, and at said time this defendant neither had any of his cotton, nor has he any of his cotton now or any other property belonging to him for which plaintiff is entitled to recover of this defendant." On the trial the plaintiff elected a money verdict, and the court directed the jury to find in his favor accordingly; whereupon the defendant sued out a bill of exceptions.

The evidence showed that on March 19, 1929, the four bales of cotton were stored in the defendant's warehouse and that the plaintiff was the owner of the same, holding receipts therefor issued by the defendant. On that day he sold the cotton to the defendant for the aggregate sum of $401.25, which was at the price of 20 cents per pound, and received for this amount the defendant's check upon the Bank of Weston. The transaction took place at the defendant's warehouse in the town of Weston, in which the bank was located, but since the bank had then closed for the day, the plaintiff immediately left for his home in Fitzgerald, Georgia, where he deposited the check in a bank for collection on March 21.

The Bank of Weston was closed as an insolvent institution on March 29 or 30, before the check was ever presented to it for payment, and the check was then returned to the plaintiff unpaid.

The plaintiff's suit was predicated upon section 4126 of the Civil Code of 1910, providing that certain products, including cotton, sold by planters and commission merchants on cash sale shall not be considered as the property of the buyer until fully paid for, though delivered to the buyer.

The defendant, who is the plaintiff in error, insists that the action of the court in withdrawing the case from the consideration of the jury and directing a verdict for the plaintiff was erroneous for the following reasons: (1) that even if a finding in the plaintiff's favor was demanded as to other issues, there was still a question as to the value of the cotton which should have been submitted to the jury; (2) that the plaintiff "was relying on the highest proven value for the amount of the recovery, hence was not entitled in law to recover interest," the verdict as directed being for the agreed purchase-price of the cotton as evidenced by the check, with interest at 7 per cent. from the date of the sale; (3) that the evidence would have authorized a finding that "it was the intention of both parties that title to the cotton was to pass to Stapleton [the defendant] immediately for the purpose of selling and securing the money to pay the check with," and thus that the plaintiff waived the provisions of section 4126; (4) that the evidence presented an issue as to whether the plaintiff exercised proper diligence in the presentation of the check, and as to whether on account of his delay in this regard, and in view of other facts, he should now be estopped from asserting title to the cotton, or at least be treated as having waived the right to claim that the sale was intended as a cash transaction; and (5) "that the evidence as a whole did not demand a verdict for the plaintiff," but would have authorized a verdict for the defendant.

The plaintiff testified that he demanded the cotton of the defendant "about the latter part of March," and that it was then "worth around twenty cents a pound," but that he "never noticed the grade." The plaintiff further testified: "As far as I cared, Mr. Stapleton could ship the cotton out and sell it, and provide the money to meet this draft. That was the way I presumed it would be handled. For several years previous to this I had handled

the sales of my cotton with Mr. Stapleton the same way, and when the checks were presented to the bank they were always paid. He sold the cotton to any one he wanted to. I do not know why Mr. Stapleton indorsed these cotton receipts. I do not know that was necessary in order for the bank to handle it. . . He told me that he would pay me for the cotton, four bales round lot; we agreed upon that, and Mr. Stapleton gave me this bill of the cotton, check or whatever you might call it, together with the cotton receipts pinned to it, and I then went back home to Fitzgerald. There was no other agreement between myself and Mr. Stapleton. I had no agreement with him as to what he should do with the cotton after he got it. It was a cash transaction, and I expected that check or draft to be paid when he gave it to me. If the bank had been open, I would have gone over there and gotten my money immediately. The Bank of Weston was not open after I sold my cotton, and it was after banking hours, and that was the reason I did not present the draft to the Bank of Weston that day. No statement was made to me by Mr. Stapleton as to what he was going to do with the cotton. All I wanted was my money, and that was the whole transaction."

The defendant testified that he sold the cotton and placed the proceeds in the Bank of Weston, "for the purpose of meeting this check;" and denied that the plaintiff ever demanded the cotton, stating that he merely asked him to pay for it. From all the evidence, it was a necessary inference that, although the proceeds of this cotton were originally placed in the bank for the purpose of meeting the check, it was thereafter withdrawn or applied to the defendant's benefit in some other way, since, under a proper construction of the defendant's own testimony, it appears that he had no money in the bank at the time of its failure, and had expected that the check would be paid only because of a special arrangement which he had made with the bank as to the payment of such checks as he would issue in the purchase of cotton. There was ample evidence to show that the bank would have paid the check in accordance with this arrangement if it had been duly presented before the bank failed.

The agreement between the defendant and the bank in regard to this matter was to the effect that in purchasing cotton on storage with him, the defendant would take up the warehouse receipts

previously issued therefor, and then indorse the receipts and attach them to checks for the purchase-money, and that the checks would be paid by the bank when the receipts were thus attached. The transaction under investigation was handled in this way; that is to say, the plaintiff at the time of selling the cotton produced the receipts as if to surrender them to the defendant, but the defendant thereupon indorsed the receipts and attached them to the check which he then and there gave to the plaintiff for the purchase-money. The receipts were thus taken and carried away by the plaintiff, and accompanied the check through the various banks which handled it for collection.

As to this matter the defendant testified as follows: "Mr. Dismukes delivered these cotton receipts to me when I gave him that check, and I attached the receipts to the check, to go to the bank. I did not intend to return the cotton receipts back to Mr. Dismukes; I intended them to follow the check to the bank, so the check would be paid. That was my indorsement to the bank."

The receipts were in the usual form, containing an obligation by the defendant as warehouseman to deliver the cotton upon the payment of accrued charges and the surrender of the receipts properly indorsed.

The evidence showed that the distance from Weston to Fitzgerald, Georgia, was about 150 miles, and that "it usually takes anywhere from three to eight days" for a check to be transmitted from one point to the other "through the clearing house," but that "you can send them direct, of course, and make better time."

■ It is true that questions of value should usually be left to the exclusive determination of the jury, and this is especially true where the evidence consists of mere estimates or opinions of witnesses (*Southern Ry. Co.* v. *Lowe*, 139 *Ga.* 362 (3), 77 S. E. 42; *Lott* v. *Banks*, 21 *Ga. App.* 246 (4), 94 S. E. 322; *Georgia Northern Ry. Co.* v. *Battle*, 22 *Ga. App.* 665, 97 S. E. 94); but as between the parties in the instant case the agreed price as stated in the contract of sale was prima facie evidence of the value of the property. This was shown by the check, which was given by the defendant for the purchase-money, and which was introduced in evidence, and in the absence of any proof to the contrary, the amount of this check was to be taken as to the value of the property at the time of the conversion, it appearing that the conversion, if

committed, occurred within not exceeding ten days from the date of the sale. *Elder* v. *Woodruff Hardware Co., 9 Ga. App.* 484 (2), 486 (71 S. E. 806); *Jordan* v. *Jenkins,* 17 *Ga. App.* 58 (1 *b*) (86 S. E. 278); *Securities Trust Co.* v. *Marshall,* 30 *Ga. App.* 379 (6) (118 S. E. 478); *Williams* v. *Baggs Auto Co.,* 32 *Ga. App.* 253 (5, 6) (122 S. E. 805); *Odum* v. *Cotton States Fertilizer Co.,* 38 *Ga. App.* 46 (3) (142 S. E. 470).

Since the written agreement as thus introduced in evidence made a prima facie case for the plaintiff as to the value of the cotton, and since there was no evidence whatever to the contrary, there was no issue in regard to value to be determined by the jury, and the court did not err in directing the verdict for the plaintiff as to this phase of the case.

■ We can not concur in the contention that the plaintiff sought to recover the highest value which the cotton may have had at any time between the conversion and the trial, and therefore cannot assent to the proposition that he was not entitled to recover interest. See *Jaques* v. *Stewart,* 81 *Ga.* 81 (2) (6 S. E. 815); *Langdale* v. *Bowden,* 139 *Ga.* 324 (2) (77 S. E. 172). On the other hand, we think it clear from the record that the evidence as to value was confined strictly to the time of the alleged conversion, and in such a case it is not error to instruct the jury that they should find for the plaintiff the amount so proved, with interest from that date to the time of the trial. *Midville &c. R. Co.* v. *Bruhl,* 117 *Ga.* 329 (2) (43 S. E. 717); *Dunn* v. *Young,* 22 *Ga. App.* 17 (95 S. E. 374); *Cox* v. *Fairbanks Co.,* 29 *Ga. App.* 538 (6) (116 S. E. 43).

There is no contention in the present case that, if interest was recoverable, it should have been embraced in a lump sum with the principal, instead of being the subject of a specific finding. See, in this connection, *Central R. Co.* v. *Atlantic & Gulf Ry. Co.,* 50 *Ga.* 444 (3); *Ware* v. *Simmons,* 55 *Ga.* 94 (2); *Martin* v. *Oslin,* 94 *Ga.* 658 (19 S. E. 988); *Western & Atlantic R. Co.* v. *Brown,* 102 *Ga.* 13 (29 S. E. 130); *Drury* v. *Holmes,* 145 *Ga.* 558 (89 S. E. 487); *Ayash* v. *Georgia Show-Case Co.,* 24 *Ga. App.* 661 (3) (101 S. E. 815). But even so, how could the defendant have been harmed by the separate finding of principal and interest? *Mayor &c. of Milledgeville* v. *Stembridge,* 139 *Ga.* 692 (3) (78 S. E. 35); *Tifton, Thomasville &c. Ry. Co.* v. *Butler,* 4 *Ga. App.* 191 (2) (60 S. E. 1087).

■ All of the other contentions of the plaintiff in error will be discussed in this division.

■ The evidence demanded the inference that the sale was intended as a cash transaction, and disclosed no agreement on the part of the plaintiff to waive the provision of the law that where cotton or other product of this class is sold on cash sale, the property will not be considered as that of the buyer until fully paid for, although it may be delivered to him. "Under the Civil Code (1910), § 4126, providing that, on cash sale of cotton and certain other agricultural products, title does not pass by delivery, until the cash is in fact paid, a sale so intended by the parties is no less a cash sale because actual payment of the cash is not made concurrently with delivery, but is temporarily deferred to meet the convenience of the parties in making a settlement." *Atlantic Coast Line R. Co.* v. *Gordon,* 10 *Ga. App.* 311 (73 S. E. 594); *Butler* v. *Moseley,* 14 *Ga. App.* 288 (80 S. E. 789). Bank checks are not payment until they themselves are paid. Civil Code (1910), § 4314.

We do not overlook the testimony of the plaintiff to the effect that as far as he cared, the defendant "could ship the cotton out and sell it, and provide the money to meet this draft," and that this was the way he "presumed it would be handled." Neither this nor any of the plaintiff's other evidence upon this point was sufficient to raise an issue as to any agreement to make an exception of the particular sale, so as to remove it from the ordinary operation of the statute. Obviously, the plaintiff would not have "cared" if the defendant sold the cotton involving this or previous transactions, provided that "when the checks were presented at the bank they were always paid." This is true whether the parties considered the sale as complete or not. The plaintiff's evidence did not warrant an inference that he intended to release his title to the cotton and to depend alone upon the check as security against loss. The plaintiff's testimony that the defendant could sell the cotton and "provide the money to meet this draft," when considered in connection with the undisputed evidence to the effect that there was no agreement as to what the defendant might do with the cotton "after he got it," tended to show only an unexpressed state of mind on the part of the plaintiff, and this did not amount to a contract between the parties. Furthermore, it is con-

clusive, from all the evidence, that any thought or expectation by the plaintiff that the defendant could sell the cotton at any time was coupled with the condition that the purchase-money would be duly paid. The plaintiff did not agree that the cotton could be sold *in order to enable* the defendant to pay for it. He assumed no responsibility as to this matter, and was not concerned with the method by which the defendant should provide the funds for such purpose. The obligation as to payment rested solely upon the defendant, and he acted at his peril in selling the cotton, although the plaintiff would not have been harmed and could not have condemned the defendant's act as wrongful or as creating a liability, if the check had been paid on presentation.

The present case is distinguished from *Mason* v. *Farmers Cotton-Oil Co.*, 29 *Ga. App.* 418 (2) (116 S. E. 123), in which it appeared, from the plaintiff's own testimony, that he agreed for the defendant to resell the property *in order to provide funds* with which to pay the plaintiff. This is to speak of the transaction only according to what appeared to be the intention of the parties at the time of the sale, and under the evidence relating to this question the jury could not have found that the parties considered "the sale complete in respect to both payment and delivery," and thus that the title passed. *Flannery* v. *Harley*, 117 *Ga.* 483 (3) (43 S. E. 765). The questions as to what were the rights and liabilities of the parties in view of the subsequent events, such as the plaintiff's delay in presenting the check and the failure of the bank in the meantime, are distinct and different matters, and involve other principles.

One who accepts a check on a bank to cover an obligation of another impliedly undertakes to present the check for payment within a reasonable time, and if he neglects to do so and the bank should fail before such presentation, the maker of the check is discharged from liability to the extent of the injury which he thereby sustains. *Comer* v. *Dufour*, 95 *Ga.* 376 (22 S. E. 543, 30 L. R. A. 300, 51 Am. St. R. 89); *Tomlin* v. *Thornton*, 99 *Ga.* 585 (27 S. E. 147). It is probably true that the evidence would have presented an issue for the jury as to whether the plaintiff exercised proper diligence in handling the check for collection, but there was nothing to indicate that the defendant suffered any loss as a result of such negligence on the part of the plaintiff, and as to

this issue the defendant had the burden of proof. *Merritt* v. *Gate City National Bank,* 100 *Ga.* 147 (3) (27 S. E. 979, 38 L. R. A. 749).

If it had appeared, as in *Sanders* v. *Lifsey,* 41 *Ga. App.* 395 (4) (153 S. E. 104), that the drawer of the check had funds in the bank during the reasonable time within which the check should have been presented, and also at the time the bank failed, the burden of evidence would then have been shifted to the holder to show that because of assets of the bank available for depositors the drawer had not sustained injury, or that his loss was less than the amount of the check, provided this question was a material one under the pleadings and the evidence; but the evidence here is silent as to whether the defendant had any money on deposit with the Bank of Weston at the time it failed, and the mere fact that he had arranged with the bank to pay his checks, by way of advancement or credit, was insufficient to show that he was injured to any extent by reason of the bank's failure.

Assuming, without deciding, that the plaintiff's delay in presenting the check for payment until after the bank had been closed as an insolvent institution might, in other circumstances, have operated to estop the plaintiff from asserting his rights under the statute, we have in the present case no ground for applying the principle of estoppel, since there is no proof whatever that the defendant suffered injury, either through the failure of the bank or otherwise, as a result of the plaintiff's negligence, if any. *Anchor Duck Mills* v. *Harp,* 40 *Ga. App.* 563 (2, 3) (150 S. E. 572).

Even if it could be said that where a person takes a check in a transaction of this sort, and then holds it beyond a reasonable time without presentation, he should be held to have *waived* the reservation of title as provided by statute, in that by such conduct he elected to treat the sale as a credit transaction, despite the absence of any express or implied agreement to that effect, we do not think there was sufficient evidence to authorize an inference of such a waiver in the present case. It appears that the plaintiff received the check after banking hours on March 19, and that he deposited it for collection in a bank at Fitzgerald on March 21. He thus held it for only one day longer than he was obliged to, and an intention to waive the benefit of the law as to sales of this kind could not have been inferred from his mere delay for such

period. Whether or not in a proper case he might be *estopped* by the failure of the collecting banks to transmit the check promptly, he should not be held to a *waiver* by reason of such negligence on their part.

Waiver and estoppel are not synonomous terms. Waiver is not predicated upon the idea of injury to the opposite party, but, as stated by Judge Russell in *Kennedy* v. *Manry,* 6 *Ga. App.* 816 (66 S. E. 29), quoting from Gandy *v.* Orient Ins. Co., 52 S. C. 224 (29 S. E. 655), "is a voluntary relinquishment of some known right, benefit, or advantage, which, except for such waiver, the party otherwise would have enjoyed." Acquiescence may sometimes amount to waiver, because a legal intention may in some cases be presumed from conduct, but there is always the requisite of intent, either express or implied. *Alabama Construction Co.* v. *Continental Car. Co.,* 131 *Ga.* 365 (8), 371 (62 S. E. 160). It has been held that "when the only proof of that intention rests in what a party does or forbears to do, his acts or omissions to act relied on should be so manifestly consistent with and indicative of an intention to voluntarily relinquish a then known particular right or benefit that no other reasonable explanation of his conduct is possible." Berman *v.* Fraternities Health &c. Asso., 107 Me. 368, 373 (78 Atl. 462).

■ As a "moreover" to all that has been said above in this division, we are constrained to hold that the redelivery of the cotton receipts to the plaintiff, indorsed by the defendant and attached to the check for the purchase-money, amounted to a symbolic pledge of the property to insure the payment of such purchase-money. The defendant testified that he "did not intend to return the cotton receipts back to Mr. Dismukes," but "intended them to follow the check to the bank, so that the check would be paid." As was said above with respect to certain testimony of the plaintiff, we note here that in like manner the defendant's intention in relation to these receipts was uncommunicated, and there was no evidence to warrant a conclusion that the plaintiff was made the defendant's agent merely for the purpose of conveying these receipts to the drawee bank. It could not have been inferred from the testimony that the receipts were made to accompany the check merely as a protection to the bank in paying this instrument, but it conclusively appeared, from all the evidence, that the check would not have been

paid if the receipts had not been so attached, and thus that the handling of these receipts in the manner referred to was a necessary condition of such payment. If the bank would not have paid the checks without the receipts, it necessarily follows that they were delivered to the plaintiff as security for its payment. It could not have been found that the receipts were extinguished when handed by the plaintiff to the defendant, since none of the parties so treated them. On the other hand, they were still regarded as representing the property, or at least their indorsement and redelivery to the plaintiff amounted to a reissue of such receipts by the defendant warehouseman for that purpose. *Maryland Casualty Co.* v. *Washington Loan &c. Co.*, 167 *Ga.* 354, 361 (145 S. E. 761). So long as the check was not paid, the defendant, as the holder of such receipts was vested with such right and title to the property represented thereby as enabled him to maintain trover for its conversion. *Citizens Banking Co.* v. *Peacock*, 103 *Ga.* 171 (6) (29 S. E. 752); *Continental Trust Co.* v. *Bank of Harrison*, 162 *Ga.* 758 (134 S. E. 775, 50 A. L. R. 412); *Evans* v. *Cannon*, 34 *Ga. App.* 467 (130 S. E. 76).

We are not to be understood as deciding whether a sale of this kind may in every case be regarded as retaining its character as a cash transaction, where the seller takes security for the purchase-money. It may or may not be that the taking of security additional to that provided by statute would convert the sale into a credit transaction. If the pledging of the cotton receipts could be said to have rendered the statute as to farm products inoperative in the present case, the plaintiff, in virtue of such pledge, was still entitled to maintain the action of trover, under the general law. In either view, the verdict for the plaintiff was the only proper legal result.

■ We conclude that as against all contentions made, the evidence demanded the verdict directed by the trial judge. Where there is no conflict in the evidence, and that introduced with all reasonable deductions or inferences therefrom demands a particular verdict, the court may direct the jury to find for the party entitled thereto. Civil Code (1910), § 5926.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*