27441, 27478. GROOVER *v.* SAVANNAH BANK AND TRUST COMPANY; and *vice versa*.
27547. SAVANNAH BANK & TRUST CO. *v.* HEERY, judge.

DECIDED MAY 24, 1939.  REHEARING DENIED JULY 15, 1939.

358

362

364

*Lawton & Cunningham, O. E. Bright, Perry Brannen,* for plaintiff.

*William L. Clay, Travis & Travis,* for defendant.

FELTON, J. (After stating the foregoing facts.)

■ Where the court directs a verdict on specific pleas, and the record so shows, the verdict, though worded as a general verdict, is not a general, undirected verdict, but is to be regarded as a verdict actually directed by the court, and a party who does not object to the form of the verdict is not precluded from excepting to the direction of a verdict. What is here held is not contrary to the principle that where a general verdict is rendered by a jury, where a special verdict is invoked, or where the jury should have specified upon which of several pleas the verdict was rendered, the failure to object to the form of the verdict is a waiver of the right to a special verdict. The reason for this principle is that unless the objection is made, and the jury required to specify upon which plea the verdict is rendered, it may reasonably be presumed that the jury rendered a general verdict upon all the pleas. Where a verdict is directed on particular pleas, the court and the parties know upon which pleas the verdict is rendered. In such a case the jury does not render a verdict from its own deliberations and there is no speculation as to its findings. So far as the contention by the defendant in error that the verdict is a general verdict, is concerned, there is no merit in the motion to dismiss the writ of error.

■ Where both parties move for a directed verdict and agree that the case is one for a directed verdict on specified pleas, for one side or the other, disputed issues of fact, if any, are impliedly

submitted to the judge for determination without a jury, and where such agreement and state of facts exist neither party can except to the verdict on the ground that there were issues of fact which should have been submitted to a jury. *Mims* v. *Johnson*, 8 *Ga. App.* 850 (70 S. E. 139); *Sovereign Camp W. O. W.* v. *Beard*, 26 *Ga. App.* 130 (105 S. E. 629). Such facts, and such an agreement, however, do not preclude the losing party from excepting to the direction of a verdict on the ground that it was demanded in his favor rather than in favor of the party for whom it was directed. To hold otherwise would interpret the party's motion for a directed verdict in his own favor, and the consent that it be directed one way or the other, as meaning that he consents to a directed verdict against him, which is not the case.

■ A direct exception lies to the direction of a verdict, and an assignment of error that the direction of a verdict was error because a contrary verdict was demanded by the evidence is a good assignment of error. *Mullis* v. *McCook*, 185 *Ga.* 171 (194 S. E. 171). The motion to dismiss the writ of error for lack of an assignment of error is denied.

■ In view of the motion by each side for a directed verdict, and the consent of the parties that a verdict be directed for one side or the other, the only question for determination under the assignments of error in the bill of exceptions is whether the verdict was demanded for the plaintiff on the issue raised by the defendant's three pleas, those of election of remedies, waiver, and ratification. If there were authorized findings of fact, or authorized inferences from undisputed facts, they can not be inquired into, nor can the question as to whether the issues should have been submitted to a jury. We are of the opinion that the evidence on the question of waiver and ratification did not demand a verdict for the plaintiff. In this view there is no necessity to consider the other questions involved.

It is extremely doubtful whether the plaintiff in error would be entitled to a reversal if her contentions were correct for the reason that the evidence included in the bill of exceptions does not show that her husband was guilty of the forgeries and unauthorized acts charged in her petition, and it therefore does not appear that a verdict was not demanded generally for the defendant. If it was, the direction on a particular plea would not be harmful. As-

suming for the sake of the argument, however, that the acts charged against the husband were proved, or that a finding of his guilt was authorized by the evidence, and that the three pleas were on such assumption of the husband's guilt, we have concluded that the evidence authorized the finding that Mrs. Groover waived and ratified her husband's acts and thereby absolved the defendant in this case from liability. The evidence material to a consideration of this question was as follows: Mrs. Groover received $5447.18 from the receiver in the suit she had brought against her husband. At the time she brought the suit against her husband and Coney & Company she knew that her husband had made sundry loans on her property, including the stock, and she knew the proceeds of these loans had gone into the effects of the insurance business of her husband and Coney & Company and that these loans had been converted into the assets of her husband and Coney & Company, and the suit was instituted to recover the assets for herself. She knew that some of the funds she received from the receiver had come from Citizens & Southern National Bank from the sale of her stock. She testified: "I split with my husband on January 8, 1936, and . . when he left here, I wanted to get clear of him. I wanted the whole matter settled between us and ended, and I wanted to get out of him what assets I could and wipe my hands of the whole proposition and get rid of him. . . Jim Lawrence was handling this for me. He went down to the jail with my authority to effect a settlement with my husband. . . When I had this settlement with my husband by which I obtained this deed, I did at that time intend to bring further claim against Robert N. Groover, not for alimony, but for the stock. I was going to bring a claim against him for the stock through the bank. I don't know whether I expected to bring this suit against the bank. This suit is not against Mr. Groover. *The only claim or action I expected to bring on this transaction was the suit against the bank.* . . [Italics ours.] Jim Lawrence, my brother, came out to my house the day this deed was signed by Mr. Groover with a paper purporting to be in full settlement of the suit . . in further settlement of all claims against R. N. Groover and anybody else, and he and my father laughed about it and said I could not sign it because the deed was in this suit. . . My father would not let me sign it, and they went away without my signature on

it. . . They told me it was a general release against the bank. I did not sign it nor did I authorize him to sign it. . .· I did not authorize Jim·Lawrence to make any release for me.· . . I intended to bring the suit against the, bank. I was not willing to drop anything against Groover if I had any further claim against the bank."

The fact of Mrs. Groover's refusal to sign the release was communicated to Groover's attorney but not to him, and his attorney did not see him after such notice to him. Mrs. Groover's refusal· to sign the release and the execution of the deed by Groover to his wife occurred the same day. There was a dispute in the testimony as·to whether the deed was to be a settlement between the parties and operate as a final release of all claims of Mrs. Groover against her husband. He and one witness swore it was a final settlement and complete release. Mr.. Lawrence and other·witnesses testified to the, contrary.

Subsequently to the time when the deed was received from the husband, conveying to her the money in several banks, the. insurance businesses and other property, Mrs. Groover paid out, on the debts of the insurance businesses, large sums approximating the amount received by her under the deed. This ·was·done, so far as the record shows, without the knowledge of. the defendant bank.

On July 28, 1933, Mrs. Groover's father, Captain C. K. Lawrence, pledged with Liberty Bank & Trust Company 100 shares of coca-cola common stock to secure the amount of all indebtedness of Robert N. Groover. The bank loaned him various sums on· this security. On January 7, 1936, his indebtedness was $19,000, and on that day he paid on it the sum of $10,000 by check on Citizens & Southern National Bank. Captain Lawrence paid the ·balance of this indebtedness. Mr. Groover borrowed an additional·$9000 from; Citizens & Southern· National Bank on January 7, 1936, and paid Liberty Bank & Trust Company $10,000. Mrs. Groover's alleged stock was hypothecated with Citizens & Southern National Bank to secure the notes of ·Robert N. Groover for $57,500 and rediscounted notes of Groover and Huger in the sum of $8709.39 and $316 accrued interest on all the said amounts. Citizens & Southern National Bank sold out the stock, which sold for $69,454, leaving a balance of $2928.56 which was placed to Groover's·credit. The bank retained enough money. to secure ·the rediscounts, and

when some of these were paid Mrs. Groover received $1687.77 therefor. Out of the proceeds of the Citizens & Southern National Bank loan Groover paid the defendant bank $34,178.93, in repayment of the loans he had made with it and secured with the Coca-Cola International stock.

Mr. M. H. Barnes, a certified public accountant, began an audit of Groover's insurance business and completed it for Mrs. Groover. He testified that the audit showed a profit of $6496.45 for 1936, 1937, and through September, 1938; that Groover paid W. M. Coney $10,000 for the Coney & Company business; that they owed Morris Plan Company $1664, and owed Liberty National Bank & Trust Company $9000; and that in 1935 Groover received $11,-357.91 in commissions. On January 15, 1936, Mrs. Groover entered into an agreement with Harris Rankin Company under which it was to operate the insurance businesses for her on a 50-50 basis, for twelve and one-half years, at which time the corporation was to own the businesses outright. On the date of the contract the businesses had $12,593.58 of accounts receivable, of which approximately $8490 were collected. After expenses were deducted, these accounts netted in cash $3210.84. The other bills receivable were turned over to Mrs. Groover's attorneys, certain of which had family and friendship involved in them, for which reason collections were not forced. A witness testified that the sales price of an insurance agency was two and one-half times the annual commissions. The annual commissions on the Groover business for 1936 were $2436. A witness testified that the business would normally grow less every year; that the computation of the value of an insurance business was based on the commissions of the year immediately preceding the sale. Groover paid $3600 for the Wheaton Agency and $10,000 for the Coney & Company agency. A witness testified the agencies were not worth anything like $27,000. Groover paid Huger $5699.27 for his interest in the partnership of Groover & Huger, an insurance agency, and Groover assumed all the obligations. The records of the following proceedings were introduced in evidence, containing substantially what they were alleged to contain in the defendant's pleadings: the petition for a receiver, the order appointing the receiver, the order of court turning over to Mrs. Groover the assets in the hands of the receiver, the receiver's final report, Mrs. Groover's final receipt to the re-

ceiver, the divorce proceedings, in which total divorce without alimony was granted, the deed from Groover to Mrs. Groover, dated January 16, 1936, conveying assets alleged in the defendant's pleadings to have been conveyed. The considerations recited in the deed were natural love and affection and other good and valuable considerations.

Mrs. Groover's cause of action is based on the alleged forgery of her name to the note for $30,000 at the defendant bank, to various checks, and the forgery of her name to the letter to the bank stating that she was giving the coca-cola stock to her husband and requesting that it have the stock transferred to him. The petition alleged that Mrs. Groover gave her authority for the stock to be hypothecated for a loan of $8000 for her husband to use in buying out the interest of Huger in the partnership of Groover & Huger. The defendant bank contends that by reason of the acts of Mrs. Groover she waived the alleged forgeries of her husband and ratified them, thereby releasing both her husband and the bank. The first question to be answered, then, is, can a forgery be ratified in so far as civil rights are concerned? The evidence does not show whether Mr. Groover attempted to imitate the handwriting of his wife, or whether he signed her name in his ordinary handwriting without her authority. Although we think that under the law it would be immaterial in which way it happened, if there is a difference, and if the former act would not be subject to ratification and the latter would, the presumption would be in favor of the directed verdict, in the absence of evidence as to what occurred. The wrong in forgery, in the last analysis, is the lack of authority, for, whether the alleged forger signs in his own handwriting or imitates that of another, his act is not a forgery if he has authority to sign the other person's name. A forger is assuming to act for another, and in his, the latter's name, and what could have been done by previously granted authority may be corrected and made perfect by subsequent ratification, as to civil rights. With the criminal aspects of this question, we are not here concerned. We might qualify what we have said as not referring to a case where one imitated the writing of another and impersonated the other as a part of the scheme to defraud. In such a case he would be acting wholly for himself, and the gist of the wrong would not be the false assumption of authority. It should be stated further

that the ratification would not be good if it involved in any way the effort to immunize the forger from criminal prosecution. *American Exchange National Bank* v. *Georgia Construction & Investment Co.,* 87 *Ga.* 651 (13 S. E. 505). The authorities holding the principle with which we agree in other jurisdictions are: Union Bank *v.* Middlebrook, 33 Conn. 95; Fay *v.* Slaughter, 194 Ill. 157 (62 N. E. 592, 56 L. R. A. 564, 88 Am. St. R. 148); Bulger *v.* Gleason, 123 Ill. App. 42; Wellington *v.* Jackson, 121 Mass. 157; and other cases cited in 2 C. J. 472, note 86. For cases holding to the contrary, see 2 C. J. 471, § 86, note 82. The questions of ratification and waiver are questions of intention. *Stapleton* v. *Dismukes,* 43 *Ga. App.* 611, 620 (159 S. E. 768). In this case, even if Mrs. Groover had testified that she had no intention to waive or ratify, the evidence authorized a finding that she did, *Merchants Bank* v. *Central Bank,* 1 *Ga.* 418 (44 Am. D. 665); *American Exchange National Bank* v. *Georgia Construction & Investment Co.,* supra; *Murray* v. *Walker,* 44 *Ga.* 58; *McDowell* v. *McKenzie,* 65 *Ga.* 630; *Ingraham* v. *Barber,* 72 *Ga.* 158, and it should be borne in mind that the only question before this court is whether a verdict on this question was demanded for the plaintiff. We do not think it was. Knowing that her husband had, as she contended, forged her name to a $30,000 note, a loan for only $8000 of which was authorized to buy out the Huger interest in the partnership, she took a deed from her husband to the interest in the insurance business purchased with the money obtained by the loan. She could not separate the loan into parts and ratify a part and repudiate a part. She knew also that an additional part of the loan was used in the business which she accepted from her husband.

The other act of forgery relied on by Mrs. Groover is the letter. Knowing that much of the proceeds of the loan from Citizens & Southern National Bank went into the insurance business, Mrs. Groover accepted the deed to the business and accepted the balance of the money derived from the sale of her stock by Citizens & Southern National Bank. Thus a finding that she ratified the forged letter was authorized. $10,000 of the money borrowed from Citizens & Southern National Bank was virtually paid to her father, as it was used as a credit on one of Mr. Groover's notes which was secured by collateral loaned him by her father. Fur-

thermore, Mrs. Groover petitioned the judge of the superior court to confirm the deed from her husband to her, which was done. A reasonable inference to be drawn from this is that the transaction was a sale, and if it was a sale the only consideration flowing to the husband was a release and ratification of some or all of his alleged wrongful acts. There is no contention that the deed was an alimony settlement, or that all the properties conveyed by the deed were the proceeds of the wrongful acts. It might be that Mrs. Groover could not ratify the application of money to her husband's debts, but a different rule applies where she becomes the owner of property bought with her money. An inference was authorized that the insurance business was worth something. It was worth more to Mrs. Groover after the payment of some of the debts. With full knowledge, she accepted a deed to these businesses, some of which were bought with her money and some of the debts of which were paid with her money. We can see no difference between the situation here and one where a woman buys land from her husband and pays off a lien, or agrees to do so, to protect her interest. *Pinckney* v. *Weil*, 183 *Ga.* 567 (189 S. E. 8) ; *Sims* v. *Scheussler*, 2 *Ga. App.* 466 (58 S. E. 693) ; *Atlanta Suburban Land Cor.* v. *Austin*, 122 *Ga.* 374 (50 S. E. 124) ; *Vizard* v. *Moody*, 119 *Ga.* 918 (47 S. E. 348) ; *Lowenstein* v. *Meyer*, 114 *Ga.* 709 (40 S. E. 726) ; *Taylor* v. *American Freehold Mortgage Co.*, 106 *Ga.* 238 (32 S. E. 153). The fact that Mrs. Groover paid out large sums on the debts of her husband after she had received the fruits of the deed would not affect the case. She took part of the fruit of the forgeries. The debts which were paid were in effect her debts, or debts of businesses or corporations to which she had absolute title. Furthermore, the ratification in this instance was not in favor of the creditor whose debt was paid with the wife's money.

The ratification of Groover's acts would fully release Groover from liability for his wrongful acts. It would be in full satisfaction as to him, and would release the joint tort-feasor. *Donaldson* v. *Carmichael*, 102 *Ga.* 40 (29 S. E. 135) ;. *Griffin Hosiery Mills* v. *United Hosiery Mills*, 31 *Ga. App.* 450 (120 S. E. 789) ; *Edmundson* v. *Hancock*, 40 *Ga. App.* 587, 591 (151 S. E. 114).

Both sides having moved for a directed verdict, and having agreed that a verdict should be directed for one side or the other,

the directed verdict must stand as directed, if it was authorized under conflicting testimony, or if authorized by inferences from all the testimony, whether conflicting or not, as, under the agreement, the judge was the trior of all facts. The verdict directed was authorized in so far as the questions of waiver and ratification are concerned as set forth in all the pleadings of the defendant specified as part of the record, and supported by the evidence set forth in the bill of exceptions and inferences therefrom. It is not necessary to decide the question of election of remedies. It is not necessary to pass on the petition for mandamus which seeks to have additional evidence certified. It is therefore denied. Neither is it necessary to pass on the cross-bill of exceptions and the motion to dismiss it, nor on the suggestion of diminution of the record.

*Judgment affirmed on the main bill of exceptions. Cross-bill dismissed. Stephens, P. J., and Sutton, J., concur.*