HARTFORD FIRE INSURANCE COMPANY V. FRANK R. HON
ET AL.

FILED DECEMBER 3, 1902.   No. 12,089.

Commissioner's opinion, Department No. 1.

1. **Arbitration:** AGREEMENT: OUSTER OF COURT.   An agreement be-
tween parties to a contract that neither shall maintain a suit
thereon after breach,—all differences to be settled by arbitra-
tion,—is without binding force, as tending to oust the courts of
their jurisdiction.

2. ———: ———: ———.   An agreement by which parties thereto
stipulate in advance not to enforce, by a resort to a court of
justice, a substantial right which may subsequently be involved
in dispute between them, but to submit such right to the de-
cision of a private tribunal, although other questions involved
may be reserved for adjudication by the courts, can not be
enforced.

3. ———: ———: ———: INSURANCE: LOSS.   An insurance policy
provided that the insurer should not be liable beyond the actual
cash value of the property at the time of loss; the loss or
damage to be ascertained by the insured and the insurer, and
in case of disagreement, then by arbitrators, selected in the
manner indicated in the contract. *Held,* That when, in the first
instance, the insured and insurer could not agree as to the
extent of the loss, there was a valid and subsisting cause of
action, subject to adjudication by a court of law, and that the
stipulation to arbitrate the amount of loss could not be enforced,
as tending to oust the jurisdiction of the courts.

ERROR from the district court for Lancaster county.
Action on an insurance policy.   Tried below before
HOLMES, J.   Judgment for plaintiff.   *Affirmed.*

*Genio M. Lamberston, Frank M. Hall, Carlton C. Mar-
lay* and *Barger & Hicks,* for plaintiff in error.

*Halleck F. Rose* and *Wilmer B. Comstock, contra.*

*Charles J. Greene, Ralph W. Breckenridge* and *John
C. Kinsler, amici curiæ.*

KIRKPATRICK, C.

This is an action brought to recover for a loss claimed
to have accrued under a policy of insurance.   The insured

had judgment below, and the case is brought to this court upon error by the insurance company. The single question presented and requiring consideration is the validity of a provision in the policy making a submission of the question of the amount of loss to arbitrators, and an award thereon, a condition precedent to the right to maintain an action. The agreement providing for arbitration is as follows: "In the event of disagreement as to the amount of the loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; * * * No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements." It has been ably and earnestly contended in briefs of counsel and in the argument at the bar, that there is nothing in the provision quoted contrary to sound public policy, or contrary to the prior decisions of this court, and that it ought, therefore, to be given full force, rendering a refusal on the part of the insured to arbitrate a good plea in bar to the action.

It is an incident of every contract that a breach on the part of one of the parties thereto gives to the other a cause of action enforceable in a court of law or equity; and an agreement between parties to a contract that neither shall maintain a suit thereon after breach—any differences to be settled by arbitration—is without binding force, as tending to oust the jurisdiction of the courts. The doctrine is stated by Mr. Justice Hunt in *Home Ins. Co. v. Morse,* 20 Wall. [U. S.], 445, 451, as follows: "Every citizen is entitled to resort to all the courts of the country, and to invoke the protection which all the laws or all those courts

may afford him.  A man may not barter away his life or his freedom, or his substantial rights.  *  *  *  In a civil case he may submit his particular suit by his own consent to an arbitration, or to the decision of a single judge.  So he may omit to exercise his right to remove his suit to a federal tribunal, as often as he thinks fit, in each recurring case.  In these aspects any citizen may, no doubt, waive the rights to which he may be entitled.*  He can not, however, bind himself in advance by an agreement, which may be specifically enforced, thus to forfeit his rights at all times and on all occasions, whenever the case may be presented."  The case quoted from involved the validity of a contract between the state of Wisconsin and the Home Insurance Company of New York, by which the latter agreed, in compliance with a statute of Wisconsin, not to remove any suit brought against it in the state courts for trial into the federal courts, and the agreement was held to be nonenforceable.  That decision announced the proposition that a party might, in any particular case, waive his right to remove his suit to the federal courts, but that he could not in advance, by agreement, bind himself that in case a

* In 1858, Michael Cancemi was indicted for the murder of Eugene Anderson, committed while the defendant was engaged in burglarizing a shoe-store.  The indictment was removed to the oyer and terminer, and the trial there resulted in a disagreement of the jury. It was then removed, by *certiorari*, to the supreme court, and sent for trial to the New York circuit, and tried before Mr. Justice Davies. The result was a conviction, but a subsequent reversal.  *Cancemi v. People*, 16 N. Y., 501.  On a second trial, there was a withdrawal of a juror during the trial and an agreement—to which the prisoner was a party—that the record should show a trial to twelve jurymen. Conviction.  *Held*, on review, that the consent of the prisoner was a nullity and the conviction illegal.  *Cancemi v. People*, 18 N. Y., 128.  This is the leading case in the United States on the point, and has been followed in *State v. Mansfield*, 41 Mo., 470; *Bell v. State*, 44 Ala., 393; *Allen v. State*, 54 Ind., 461; *Williams v. State*, 12 Ohio St., 622; *Hill v. People*, 16 Mich., 351.  But see, *contra, State v. Kaufman*, 51 Ia., 578.  A different rule from that laid down in a majority of the foregoing decisions has been held to obtain in misdemeanor cases.  *Commonwealth v. Dailey*, 12 Cush. [Mass.], 80; *Murphy v. Commonwealth*, 1 Met. [Ky.], 365. It is hard to discover any well-grounded reason for a distinction between felonies and misdemeanors as to this and similar questions, *e. g.*, such an one as was raised in *Browning v. State*, 54 Nebr., 203, 205, and *Allyn v. State*, 21 Nebr., 593.  Did not this distinction have its origin in the humanity of the judges, in the days when they cropped the ears and slitted the nose of the man convicted of a felony? —W. F. B.

future suit should arise, he would not avail himself of the right to remove it to such courts, because every man is entitled to resort to all the courts and invoke their protection, and can not be held to an agreement to enforce which would result in depriving him of a substantial right guaranteed by the law. The provision found in the constitution of the state (section 13, Bill of Rights) embodies the same general proposition: "All courts shall be open, and every person, for any injury done him in his lands, goods, person, or reputation, shall have a remedy by due course of law, and justice administered without denial or delay." Thus it will be seen that a stipulation that no suit shall be maintainable upon the contract after breach, is void. This proposition, we understand, is conceded in the case at bar; and if the stipulation above quoted results in ousting the courts of jurisdiction, it must be held unenforceable.

But it is contended that the provision does not contemplate ousting the jurisdiction of the courts; that the contract merely provides for an adjustment by arbitration of the amount of the loss, leaving the question of liability to be adjudicated in the usual channel of the courts. Between this kind of a stipulation, it is said, and one providing for the submission of all matters in dispute, including the question of liability, there is a definite distinction—the former valid and enforceable, the other admittedly opposed to the policy of the law. The theory of plaintiff in error is that under such a stipulation in the contract, the award becomes a condition precedent to the right of action; that no cause of action accrues until the arbitrators have made an award. Such an agreement, it is contended, does not oust the courts of jurisdiction, for the reason that parties are at liberty to contract that in the event of unliquidated damages arising from contract, such damages shall be liquidated and ascertained by a given mode; both parties binding themselves to refer that question to a private tribunal of their own selection, clothing that tribunal with power finally and conclusively to adjudicate that question. Stated in other terms, the contention of plaintiff in

error amounts to a concession that the parties can not bind themselves to settle the question whether the company is liable at all in this manner, because the policy of the law forbids such an agreement, but that they are free to stipulate that the amount of the loss shall be ultimately decided by a mode agreed upon, other than a resort to the courts. If this distinction is sound, the arbitration and award must be held, in accordance with the plain reading of the agreement, a condition precedent to a right of action. If, on the contrary, there is no real or substantial distinction in principle between an agreement to refer the whole controversy and an agreement to refer only a particular part of it, the agreement under consideration must, of course, be held to come within the doctrine prohibiting agreements which oust the courts of jurisdiction. An agreement, as we have already seen, that neither party should maintain an action on a contract either at law or in equity,—any controversy to arise to be referred to arbitration,—can not be enforced, upon the theory that the powers of all the courts may always be invoked by every citizen for the protection of his rights; that the enforcement of a valid and subsisting cause of action is a substantial right; and that he can not be held to have bartered that away by any agreement made before it arose. Upon principle, therefore, we assume it to be true that an agreement by which the parties thereto bind themselves to refrain from resorting to the courts for the adjudication of a cause of action to arise between them in the future is void, and the real question in this case is whether this principle has been violated by the arbitration agreement pleaded.

In the contract upon which this action is brought, plaintiff in error agrees to be liable not beyond the actual cash value of the property at the time any loss or damage occurs. To the extent of such loss or damage, it does not question its liability. Further than this there is nothing in the contract by which the liability of the company is indicated. All the residue of the clause relates to the mode

of ascertaining or estimating the "actual cash value of the property at the time any loss or damage occurs." The contract further provides: "In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained" by appraisers; indicating the manner of their selection and the rules to govern their deliberations. The award of the appraisers, of course, not being subject to review by a court of law or equity, and being unimpeachable except for fraud, becomes conclusive of the question of the amount of the loss. It is, therefore, apparent that, so far as the question of the amount of the loss is concerned, the party has, by the agreement into which he has entered, closed up all access to the courts. The agreement to arbitrate contemplates a reservation by the company and the insured of the question of liability in any event. Inasmuch as it is not to be assumed that the company would go to the trouble of an expensive arbitration of the amount of the loss, bearing its share of the cost, unless it was ready to concede its liability for some loss, the presumption would naturally be that when arbitration of the loss is once undertaken, the extent of the loss is the question of chief importance to all concerned. But even if the question of the company's liability is not in every instance tacitly conceded by entering into arbitration of the amount of the loss, it is certain that in some instances this would be the case; and in every such instance, at least, all of the rights at stake between the parties would be wholly and exclusively in the hands of a private tribunal, to be finally adjudicated by them, in compliance with a contract entered into long before any dispute had arisen, and before the parties knew that any dispute would arise. Now, in a case such as that supposed, the company tacitly or expressly admitting its liability, what would be the question for settlement? Namely, the extent of the company's liability, measured "by the actual cash value of the property at the time any loss or damage occurs." Is it not a matter of very substantial interest to the parties that this question should be settled

rightly? A settlement of the matter upon a basis which would give to the insured an amount either too small or too large would be for one of the parties to suffer, just to that extent, a deprivation of his property rights. But, it is said, the parties have agreed upon that mode of settlement, and if one or the other should suffer such a deprivation, it must be held to come within the reasonable and necessary intendments of the contract. The answer is that the courts of law, established and maintained by society, with all the safeguards surrounding their administration of justice, are constituted and maintained for the specific purpose of settling just such differences. A jury may or may not be as competent and skillful in arriving at the exact amount of the loss as would be a board selected by the parties themselves; but the law gives to either party the right to have a jury, safeguarded by all the machinery of a duly constituted court of justice, pass upon that question; and to this effect the constitution (section 6, Bill of Rights) has provided: "The right of trial by jury shall remain inviolate." It may be readily admitted that in such a case, after it has arisen, the party may submit this particular question by his own consent to arbitration, or to the decision of a single judge. But we can not see upon what principle his agreement, made in advance, and binding himself before this right accrues to forfeit it after it does accrue, can be specifically enforced against him. To so enforce it would be tantamount to saying that while parties can not by contract barter away all of their substantial rights which may later be involved in controversy between them, they can make a severance and barter away the one which is likely to be of chief significance when the controversy does finally arise.

If the position contended for be correct, the principle would apply to all contracts. Should a person or corporation, employing a large number of servants, in each contract of employment stipulate that in case of personal injury to the servant during employment, the amount of damage should be submitted for arbitration to a board of

physicians, their determination of that question to be
final and conclusive, the question of liability to remain
for the determination of the courts, it will hardly be con-
tended that such an agreement would be enforced; yet the
principle involved would be indentical with that in the
case at bar. To recognize the existence of such a distinc-
tion would, it seems to us, be a plain evasion of a salutary
doctrine firmly imbedded in the law,—that courts will not
lend their aid in the enforcement of contracts the effect of
which would be to close their doors to suitors who would
otherwise be entitled to their protection.

In *Insurance Co. v. Morse,* 20 Wall. [U. S.], 445, 450,
is found this language: "Should a citizen of New York
enter into an agreement with the state of Wisconsin, upon
whatever consideration, that he would in no case, when
called into the courts of that state or the federal tri-
bunals within it, demand a jury to determine any rights
of property that might be called in question, but that
such rights should in all such cases be submitted to
arbitration or to the decision of a single judge, the
authorities are clear that he would not thereby be de-
barred from resorting to the ordinary legal tribunals
of the state." And if a citizen of New York could not
be held, upon principle or authority, to such a contract
as that supposed with the state of Wisconsin, it seems
to us equally clear that he could not be held to a con-
tract with a citizen of that state, binding himself, in any
suit thereafter to arise between them, not to demand a
jury trial to determine any rights of property that might
be called into question, but that such rights should, in any
case to arise, be submitted to arbitration or to the decision
of a single judge. Yet the latter is, according to our view,
in effect, the contract under consideration in the case at
bar; and we are of opinion that it can not be enforced, and
that it is revocable by either party at any time before ar-
bitration is had.

We are not unmindful of the fact that there are many
cases in both federal and state courts recognizing the dis-

tinction sought to be maintained here. These decisions are for the most part based upon *Scott v. Avery,* 5 H. of L. [Eng.], 811, decided in 1856. That was a case involving marine insurance, where the contract provided that the loss, as to amount, must first be settled by what was styled a "committee," which seems to have been a board of officers of the insurance company, but if a difference should arise between the insured and the committee, such difference should be referred to arbitration,—the award of the arbitrators to be final,—with the further provision that if the insured refused to accept the settlement made by the committee, the obtaining of the decision of the arbitrators was a condition precedent to the maintaining of an action. In that case it was conceded by all the lords that it had become the settled law that a contract which required all questions in controversy to be submitted to arbitrators, whose award should be final, was void, as a contract tending to oust the courts of their jurisdiction, and for that reason contrary to public policy; but it was held by a majority of the lords that the provision in the policy was valid because it only required that the question of amount be submitted to arbitration. We have made a very careful examination of the arguments advanced in the several opinions given by the lords in support of the conclusion reached by the majority, and with all due respect, are forced to the conclusion that the position taken is unsound. The distinction urged does not seem to have any solid foundation upon which to rest. The real question is, will parties be bound by a contract to settle differences by an arbitration which shall be final, and, by stipulation entered into when the contract is formed, deprive themselves of the right to the protection of the courts? Suppose, in a controversy arising upon a loss sustained under an insurance policy, three distinct questions are presented for determination. It is conceded by all parties that an agreement to submit all of the questions to arbitration is against public policy and void. Upon what sound reason can it be said that an agreement to submit one or two of the questions in con-

troversy can be sustained? As we have seen, the one or two questions may be the questions of vital importance, and the third question may sink into insignificance, or may be entirely eliminated by the arbitration of the two questions. Or suppose ten questions are in controversy: Will the courts say that a contract to submit nine is valid and will be enforced, so long as the party has one question left, concerning which he has a right to be heard in the courts? Of course, the one remaining question may be of minor importance, and the party may not desire to go into the courts upon that. Yet so long as the contract does not deprive him of the right to go into the courts upon all the questions involved, it is valid and will be enforced. It seems clear to us that an agreement which deprives a party of a right to the protection of the courts upon a single question, which may be the question of greatest importance in the controversy, violates the principle involved to the same extent as would an agreement requiring all matters to be submitted. If we say that an agreement to submit one question to arbitrators is valid, then there is no middle ground upon which to stand. If one question can be submitted, and the determination of the arbitrators be final, then all questions involved can upon the same principle be submitted. The distinction made by the learned lords in *Scott v. Avery*, does not rest upon sound principles. It is a difference in degree rather than in kind.

The question was passed upon by this court in *German-American Ins. Co. v. Etherton*, 25 Nebr., 505. The policy in that case, among other things, contained the following provision: "It is expressly stipulated by the parties hereto that no suit or action against this company shall be sustained in any court of law or chancery until after an award shall have been obtained fixing the amount of such claims, in the manner above provided." Reese, C. J., in considering this clause in the policy, said: "As to the first of the above-quoted clauses we apprehend that there is practically no dispute but that the whole provision is void." In the syllabus in that case it is said: "A provision in a

policy that no suit or action against the insurer 'shall be sustained in any court of law or chancery until after an award shall have been obtained' by arbitration, 'fixing the amount' due after loss, is void, the effect of such provision being to oust the courts of their legitimate jurisdiction." It is said by counsel for plaintiff in error that the loss in the case arose from the destruction of a dwelling-house and contents, and that the clause quoted in the policy was void as being contrary to the valued policy law, and that while the decision in that case was correct, the learned judge writing the opinion gave a wrong reason.   In this counsel is in error.  The valued policy law took effect July 1, 1889, while the policy considered in that case was written December 21, 1886.

The question under consideration has been more or less directly involved in the following cases: *Union Ins. Co. v. Barwick,* 36 Nebr., 223; *Home Fire Ins. Co. v. Bean,* 42 Nebr., 537; *Insurance Co. of North America v. Bachler,* 44 Nebr., 549; *Home Fire Ins. Co. v. Kennedy,* 47 Nebr., 138; *Schrandt v. Young,* 62 Nebr., 254. And the doctrine has been assumed to be firmly established in the body of our law; but because of the very earnest and able manner in which the doctrine has been challenged by counsel for plaintiff, and the authorities cited from various courts entitled to fair consideration, we have seen fit to reexamine the question; but we can not, on principle, see any valid reason why a doctrine which has stood for many years, and which has become a rule of property, should now be abandoned.   On the contrary, we can see many reasons why it should be adhered to.

From what has been said it follows that the judgment of the district court should be affirmed, and it is therefore recommended that the same be done.

HASTINGS, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.