Bill O. ROLLINGS, Appellee,

v.

THERMODYNE INDUSTRIES, INC., an Oklahoma corporation, Appellant.

No. 82774.

Supreme Court of Oklahoma.

Jan. 23, 1996.

Patrick O. Waddel, David L. Bryant, Patricia Ledvina Himes, Gable & Gotwals, Inc., Tulsa, for Appellant.

J. Warren Jackman, Kevin M. Abel, William A. Caldwell, Pray, Walker, Jackman, Williamson & Marlar, Tulsa, for Appellee.

Rex K. Travis, Margaret E. Travis, Oklahoma City, Steven R. Hickman, Frasier & Frasier, Tulsa, Brief Amicus Curiae of Oklahoma Trial Lawyers Association.

SUMMERS, Justice:

Up to now the Court has not squarely confronted this question: Is a private agreement to submit future disputes to statutory arbitration binding on a party to the contract who now prefers court resolution over arbitration?

Rollings, the patent holder of a design of a new industrial water heater, entered into a contract with Thermodyne to manufacture the water heater. The contract stated "[I]n the event of any dispute between the parties hereto relating to this Agreement, the parties hereby agree to arbitrate such dispute under the rules, regulations and guidelines of the American Arbitration Association." The agreement also stated that the "agreement shall be deemed to be a contract made under the laws of the State of Oklahoma, and for all purposes shall be interpreted in its entirety in accordance with the laws of said State." Apparently the parties expected this to be a very profitable venture, with sales in the millions of dollars.

A dispute arose, and Rollings, after sending a couple of letters to Thermodyne, filed suit in District Court. He sought a declaratory judgment, asking that the Court determine that the contract and license were terminated. Rollings also sought to prohibit Thermodyne from manufacturing and selling any more industrial water heaters using his patented design.

Thermodyne moved for an order compelling arbitration pursuant to the clause in the contract. The trial court denied Thermodyne's request, holding that the arbitration clause in the contract was void because it unconstitutionally violated the Oklahoma Constitution, Article 2, Section 6 and Article 23, Section 8. The Court of Appeals reversed, holding that the arbitration clause did not violate the Constitution, observing that the arbitrator's decision was subject to a limited review in the courts. We granted certiorari to resolve this important question.

Rolling's argument is that the arbitration provision in the contract violates Oklahoma Constitution, Article 2, Section 6 and Article 23, Section 8.[1] In essence, his argument is that the arbitration clause unconstitutionally deprives him of access to courts for future controversies such as this one. He claims that regardless of any modern public policies favoring arbitration, the Oklahoma Constitution sets rights in stone which he cannot waive and of which he cannot be deprived.

Oklahoma Constitution, Article 2, Section 6, reads:

The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and

---

1. The amicus curiae, Oklahoma Trial Lawyers Association, urges that the arbitration clause is unconstitutional because it waives the right to a jury trial, a right guaranteed by Article 2, Section 19 of the Oklahoma Constitution. Neither Rollings nor Thermodyne raised or briefed Art. 2, § 19 of the Oklahoma Constitution. However, in *City of Bethany v. PERB* we held that mandatory arbitration required under 11 O.S.Supp.1985 § 51–111 did not violate Art. 2, § 19.

for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay or prejudice.

Article 23, Section 8 states:

Any provision of a contract, express or implied, made by any person, by which any of the benefits of this Constitution is sought to be waived, shall be null and void.

A violation of Section 8 is dependent on the abridgment of some other state constitutional right. Thus, if no other state constitutional right has been violated, there is no Section 8 violation.

Thermodyne urges that Section 8 should not be interpreted literally, and asks that it "be applied broadly, not technically and restrictively." First, Thermodyne points out that the Uniform Arbitration Act, 15 O.S. 1991 § 801 et seq., specifically mandates enforcement of the arbitration agreements. Thermodyne states that this statute can be aligned with Article 2, Section 6 (and thus Article 23, Section 8) because this Court has never interpreted access to courts to be absolute. Next, Thermodyne urges that even if it is a violation of access to courts, Rollings waived his right to access the courts. Thermodyne gives several examples of instances in which the waiver of constitutional rights (such as waiver of jury trial in a criminal proceeding) has been upheld. Finally, Thermodyne urges that modern public policy requires this Court to uphold the validity of arbitration clauses because it is an effective and efficient method of resolving disputes, and should be favored by this Court.

Under Section 8 we have invalidated agreements to release a party from all future liability arising out of a personal injury. *Pine Belt Lumber Co. v. Riggs*, 80 Okla. 28, 193 P. 990 (1921); *Chicago, R.I. & P. Ry. Co. v. Smith*, 77 Okla. 297, 188 P. 670 (1920). But the provision has not been interpreted literally and restrictively. For example, we have held valid an agreement permitting self-help repossession rather than requiring recourse in the courts. *Helfinstine v. Martin*, 561 P.2d 951 (Okla.1977) (held valid because the remedy of self-help was available at common law and thus was adopted at statehood). Interpreting this section, the Tenth Circuit validated plea bargains in criminal cases. *Larsen v. Frazier*, 835 F.2d 258 (10th Cir. 1987).

As for Section 6, this Court has also declined a literal construction, although we have closely scrutinized actions which deny access to courts. In *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.*, 782 P.2d 915, 919 (Okla.1989), we held that Section 6 "requires that a complainant must be given access to a court if he has suffered a wrong which is recognized in the law." We also stayed with our prior observation that Section 6 operates as a mandate to the judiciary rather than a limitation on the legislature. *See Wagoner County Election Bd. v. Plunkett*, 305 P.2d 525 (Okla.1956). In other words, Section 6 was intended to guarantee that the judiciary would be open and available for the resolution of disputes, but not to guarantee that any particular set of events would result in court-awarded relief.[2] The Legislature may repeal the actionability of certain behavior, as it did with the causes of action for seduction and alienation of affections. 76 O.S.1991 § 8.1; *Wilson v. Still*, 819 P.2d 714 (Okla. 1991).

Further, we have held that Section 6's protection does not require that the government waive all immunity in order to allow suits to proceed to court. *Griggs v. State ex rel. Dept. of Transp.*, 702 P.2d 1017, 1018–19 (Okla.1985). Section 6 has most often be used to insure, regardless of status, that equal access to court is permitted. *Jeffries v. State*, 9 Okla.Crim. 573, 132 P. 823 (1913) (it violates the letter and spirit of Section 6 to deny access to court because a pauper cannot pay the fees and costs); *Fiedeer v.*

---

**2.** The Court of Appeals, in *Local Federal Bank v. JICO*, 842 P.2d 368, 370 (Okla.1992), was faced with a Section 6 question. There the guarantors of a note signed an unconditional waiver which established their primary liability. The Guarantors asserted that the agreement violated Section 8 and Section 6's access to courts. The court held that the parties were free to bargain as they saw fit, even if the results are harsh. The waiver of rights was upheld. *See also Founders Bank & Trust Co. v. Upsher*, 830 P.2d 1355, 1364 (Okla. 1992) (upheld a guarantor's waiver of rights—did not address the waiver in the face of Section 6).

*Fiedeer,* 42 Okla. 124, 140 P. 1022 (1914) (married woman must be given access to court to prosecute an action against her husband).

■ Although the legislature is permitted to enact legislation to facilitate speedy resolution of differences, that legislation cannot be used to deny access to court. In *Johnson v. Scott,* 702 P.2d 56 (Okla.1985), the plaintiff was incarcerated, and brought a small claims action to retrieve some clothes left in the jail. The judge dismissed for failure to appear. We held that the legislature could set out a procedure to follow for small claims in order that they proceed quickly and smoothly. However, this procedure could not be construed to deny a plaintiff the right to present his claim.

## ARBITRATION

■ Oklahoma has adopted the Uniform Arbitration Act. *See* 15 O.S.1991 § 801 et seq. The Act, in Section 802, states that the making of a written arbitration agreement confers upon the courts the jurisdiction to enforce the agreement to arbitrate any existing or future controversies.[3] It further states the grounds which may serve as a basis to vacate the award by a reviewing court: (1) fraud, (2) bias of an arbitrator, (3) arbitrator exceeded his or her power, (4) hearing was not conducted fairly, (5) there was no arbitration agreement. Clearly, the Uniform Arbitration Act provides for judicial review, albeit limited.

We have on several occasions reviewed various statutes dealing with arbitration. Following the trend, we have stated that "courts generally favor arbitration statutes." *Voss v. City of Oklahoma City,* 618 P.2d 925, 928 (Okla.1980). Arbitration allows for a speedy and less costly resolution of conflicts. *Id.*

There are different kinds of arbitration. Arbitration required by a statute is considered compulsory arbitration. Arbitration agreed to by private parties is referred to as voluntary arbitration. It is voluntary arbitration which is involved in the present case.

Oklahoma has reviewed arbitration in both the voluntary and compulsory setting. In *Mindemann v. Ind. School Dist. No. 6,* 771 P.2d 996 (Okla.1989), we invalidated an arbitration provision which required the last level of the grievance procedure to be submitted to binding arbitration. The provision was invalidated because a statute required that the school board have the decision-making power in such instance. We held that the school board could not "negotiate away" its statutory duties. Shortly thereafter, we invalidated an arbitration provision because it impermissibly delegated the school board's authority to reprimand a teacher. *Raines v. Indep. School Dist. No. 6,* 796 P.2d 303 (Okla. 1990).

In *Voss v. City of Oklahoma City,* 618 P.2d 925 (Okla.1980), the issue was whether the employee's rights to proceed to District Court had been waived by the adoption of the collective bargaining agreement. The Court stated that while an agreement to arbitrate a future controversy was unlawful at common law, the common law did not apply because of specific legislation, the Fire and Police Arbitration Act. Thus, arbitration could cover a future controversy. The arbitration clause was upheld as the exclusive method of adjusting grievances.

As for voluntary arbitration, we have also addressed it in several contexts. The most recent is *Cannon v. Lane,* 867 P.2d 1235 (Okla.1993). In *Cannon,* a state employee sued an HMO[4] for bad faith. The HMO had contracted with the state to provide medical care. The issue was whether the HMO was an insurance company within the meaning of the Uniform Arbitration Act. We held that

---

3. Section 802(A) states:
   A. This act shall apply to a written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties. Such agreements are valid, enforceable and irrevocable, except upon such grounds as exist at law or in

equity for the revocation of any contract. This act shall not apply to collective bargaining agreements or contracts with reference to insurance except for those contracts between insurance companies.

4. HMO is an abbreviation for a health management organization.

it was, and as an insurance company it was expressly excluded from the Arbitration Act. We then had to decide the legal effect of the voluntary arbitration agreement between the HMO and the state. Because the Act was inapplicable we applied the common law rule, and refused to uphold the arbitration provision, stating that "agreements to submit future controversies are contrary to public policy," citing *Wilson v. Gregg*, 208 Okla. 291, 255 P.2d 517 (1953), and *Boughton v. Farmers Ins. Exch.*, 354 P.2d 1085 (Okla.1960). Aside from these cases, we noted that 15 O.S.1991, § 216 makes void any contract which restricts a party's right to enforce his rights by the "usual legal proceedings." In a footnote, we stated that we were not deciding the constitutional issue of whether the arbitration agreement was invalid under Section 8 of Article 23.

In *Dean Witter Reynolds Inc. v. Shear*, 796 P.2d 296 (Okla.1990), a party sued to enforce an arbitration agreement. The issue was whether Oklahoma's fundamental law governed the contract or whether the choice-of-law provision required that New York law be followed. We did not directly address the validity of the arbitration provision because we held that the agreement was governed by New York law.

*Long v. DeGeer*, 753 P.2d 1327 (Okla.1988), presented another issue with regard to a private contract which included an arbitration clause. We upheld the arbitration provision, stating that the agreement on its face showed a clear intent to waive right to a jury trial. We did not specifically address the constitutionality of the arbitration clause because it was not raised by the parties.[5]

## LEGAL APPROACHES OF OTHER STATES

Although more than thirty five states have adopted some form of the Uniform Arbitration Act, no other state has a constitutional provision like Oklahoma's Article 23, Section 8.[6] Generally, courts have upheld and enforced arbitration clauses.[7]

A few states have invalidated an arbitration clause under the "access to courts" provision of the state constitution. *State v. Nebraska Assoc. of Public Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991); *Simon v. St. Elizabeth Medical Center*, 355 N.E.2d 903 (Ohio 1976). In *Nebraska Association*, the Uniform Arbitration Act provided for binding arbitration when an arbitration clause was agreed to by the parties of a written contract. The Nebraska Supreme Court held the clause unenforceable, ruling that Nebraska had never enforced contract provisions which waive rights before a controversy has arisen. The Ohio Court found a limited review did not satisfy the access to courts requirement. Utah and New Mexico were faced with similar challenges in *Barnhart v. Civil Serv. Employees Ins. Co.*, 16 Utah 2d 223, 398 P.2d 873 (1965) and *Board of Educ. v. Harrell*, 118 N.M. 470, 882 P.2d 511 (1994). Both courts held the statutes unconstitutional, based on lack of access to courts.

Most states, however, which have considered the question of constitutionality have upheld arbitration statutes. In a later Utah

---

5. The Court of Appeals, in *Ditto v. RE/MAX Preferred Properties*, 861 P.2d 1000 (Okla.Ct.App. 1993), refused to uphold an arbitration clause which did not permit both parties to have a voice in the selection of arbitrators. The party seeking to uphold that arbitration provision urged that it was valid because of the appeal rights provided under the Uniform Arbitration Act. The Court of Appeals disagreed, holding that regardless of the right to appeal, the impartiality of arbitrators was essential. The court refused to address the constitutional challenges raised.

6. The states which have enacted a form of the Uniform Arbitration Act are: Alaska, Arizona, Arkansas, Colorado, Delaware, District of Columbia, Florida, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Wyoming. For a complete listing of the various statutory citations, see the preface to 15 O.S.1991 § 801.

7. *Benefits Communication Corp. v. Klieforth*, 642 A.2d 1299 (D.C.App.1994); *Des Moines Asphalt v. Colcon Ind.*, 500 N.W.2d 70 (Iowa 1993); *Mountain Plains Constructors v. Torrez*, 785 P.2d 928 (Colo.1990); *Vukasin v. D.A. Davidson & Co.*, 241 Mont. 126, 785 P.2d 713 (1990); *Docutel Olivetti v. Dick Brady Systems Inc.*, 731 P.2d 475 (Utah 1986). *See generally* 55 A.L.R.2d 432 (1957).

case, *Lindon City v. Engineers Constr. Co.,* 636 P.2d 1070 (Utah 1981), the Utah court upheld an arbitration clause. The court distinguished *Barnhart,* stating that after *Barnhart* the legislature had amended the statutes to permit the waiver of rights to future controversies.

Colorado has upheld its arbitration statutes in the face of constitutional challenges. In *State Farm v. Broadnax,* 827 P.2d 531 (Colo.1992), a statute requiring arbitration in insurance contracts was challenged on the basis of access to courts and denial of jury trial. The insurer urged that because the statute did not provide for de novo review by a district court, it denied access to courts. The Colorado Court, relying on federal concepts of due process, held that the statute did not violate the right to access to courts because it gave the insurer a meaningful opportunity to be heard, that it allowed courts a limited review of the arbitrator's award. The court also held that the right to jury trial was not violated.

*New Hampshire Ins. Co. v. State Farm Ins. Co.,* 643 A.2d 328 (Del.1993) took a different approach in validating their arbitration statutes. There, the insurer urged that arbitration denied access to courts. The court held that access to court was not a fundamental right. Under the lesser standard of rational basis, the statute passed muster.

In *Reicks v. Farmers Commodities Corp.,* 474 N.W.2d 809 (Iowa 1991), the commodities broker contended that he was denied access to court and a jury trial because of a compulsory arbitration clause. The court disagreed, and held that the binding effect of arbitration does not make it unconstitutional.[8]

At least seven states have upheld arbitration as a permissible infringement on the right to jury trial. *Miller v. Two State Constr. Co.,* 118 N.C.App. 412, 455 S.E.2d

678 (1995); *Reicks, supra; Broadnax, supra; Anderson v. Elliott,* 555 A.2d 1042 (Me.1989); *Graham v. State Farm Mut. Auto. Inc. Co.,* 565 A.2d 908 (Del.1989); *Lumbermens Mutual Cas. Corp. v. Bay State Truck Lease, Inc.,* 366 Mass. 727, 322 N.E.2d 737 (1975); *Nordenstrom v. Swedberg,* 143 N.W.2d 848 (N.D.1966).[9] While most did so in a conclusory manner, *Miller* relied on the Delaware case which held that the public policy of the state strongly favored arbitration.

*Anderson v. Elliott,* supra, upheld an arbitration statute which required attorneys to arbitrate with their clients if there was a fee dispute. The court took a novel approach, reasoning that because the Supreme Court had superintending control over the Bar Association and its members, it was constitutional for the Supreme Court to require arbitration.

Although the cases are varied in their results, the trend favors arbitration. Arbitration is a good method of resolving cases without resort to courts, and Oklahoma has recognized this with the enactment of the Uniform Arbitration Act, the Police and Fire Arbitration Act, and various statutes requiring arbitration for teachers. Most states have enacted the UAA in a form similar to that adopted by Oklahoma.

We believe that with the limited scope of review as provided in the Oklahoma Uniform Arbitration Act, the parties' agreement is sufficient to pass muster under Section 6. After arbitration has been completed the parties may obtain judicial review of the arbitration award. This review insures that the arbitration process will be conducted fairly and without bias. This resolution maintains our long-standing interpretation of Section 6 as a mandate to the judiciary rather than a limitation on the legislature's power to enact new laws. *See Wagoner,* 305 P.2d at 531.

---

**8.** *See also Mahoney v. Doerhoff Surgical Serv.,* 807 S.W.2d 503 (Mo.1991) (constitutional under the access to courts and jury trial provisions to require a screening of medical malpractice claims before a lawsuit could be brought).

**9.** But see *Williams v. Williams,* 110 Nev. 830, 877 P.2d 1081 (1994), wherein the Nevada Supreme Court invalidated a section of the Uniform

Arbitration Act because it violated the right to jury trial. "For a form of alternative dispute resolution to pass constitutional muster, it must not place too great a restriction on the right to a jury trial." *Id.* at 1083. The court indicated that a different result might obtain if the arbitration clause had been voluntary.

## THE OKLAHOMA CASES

Rollings urges that *Cannon v. Lane*, supra, and the line of cases it relied upon prohibit us from validating the arbitration clause, because the clause operates to waive constitutional rights which arise in a future controversy. We disagree. In *Cannon*, we held that the contract in question did NOT fall within the provisions of the Uniform Arbitration Act, and was thus governed by our prior cases of *Boughton* and *Wilson* as well as by 15 O.S.1991 § 216.

In the present case the parties do not question that the contract falls under the provisions of the Uniform Arbitration Act. The terms of the contract expressly state that it does. Thus, *Cannon* is inapplicable, as it specifically dealt with a contract which was not subject to the Uniform Arbitration Act.

Neither *Boughton* nor *Wilson* prohibit this result. Those cases were decided long before the enactment of the Uniform Arbitration Act, and before the courts began to look on arbitration with favorable eyes. The reasoning in *Wilson* for invalidating an arbitration provision was because "they deprive the courts of jurisdiction and are contrary to public policy." *Id.* at 529. No longer does Oklahoma disfavor arbitration. In fact, we have a strong public policy which favors it. *See Taylor v. Johnson*, 706 P.2d 896, 898 (Okla.1985); *Voss v. City of Oklahoma City*, 618 P.2d at 928. As we held in *Voss*, the common law rule prohibiting arbitration does not apply when there is specific legislative approval, such as there is here with the enactment of the Uniform Arbitration Act. We find the logic of *Boughton* and *Wilson* inapplicable to a private contract, executed after the legislative enactment of the Uniform Arbitration Act, in which the parties specifically agreed to an arbitration provision.

■ The fact remains that after we analyze every other state's arbitration results, we are still the only state with an Article 23, Section 8. What is its effect on the arbitration clause? The solution lies in analyzing the true meaning of Article 2, Section 6, the only Constitutional provision argued by the parties to have been violated. For only if another part of the Constitution is breached can Section 8 be invoked.

Section 6, in affording a remedy "for every wrong" does not prohibit the Legislature from fixing the boundaries of what constitutes a "wrong". *See St. Paul*, 782 P.2d at 919. It does not promise a remedy for every injustice; instead only those "wrongs" recognized by the Legislature are protected by Section 6. One of the elected Legislature's jobs is to make public policy for the State. *Okla. Water Resources Bd. v. Texas County Irrigation & Water Resources Ass'n*, 711 P.2d 38, 41 n. 2 (Okla.1985); *see also Stewart v. Rood*, 796 P.2d 321, 329 n. 13 (Okla.1990). It is within the Legislature's prerogative to change the common law to "reflect a change of time and circumstances." *St. Paul*, 782 P.2d at 919. In this case the Legislature has said you may agree to arbitrate your dispute, and once you have done so, the courthouse door stands open to you if you have been the victim of fraud, bias, excess of power, or unfair procedure. Those things are now the "wrong" for which you have a judicial remedy. In a similar sense the Legislature has given you a "wrong" against the builder for injuries sustained only in the first ten years of a building's construction, 12 O.S. § 109, and it has deprived you of a "wrong" for your spouse's seduction or alienation of affections by another person. 76 O.S.1991 § 8.1 *Wilson v. Still*, 819 P.2d 714 (Okla.1991).

Finally, the statutory judicial review, though limited, provides court access to assure that your contract dispute is not resolved against you in an arbitrary, unfair manner. Fundamental due process is preserved.

We therefore hold that the arbitration provision in the contract between Rollings and Thermodyne is enforceable. The Court of Appeals' opinion is vacated. This matter is remanded to the trial court for proceedings consistent with this opinion.

KAUGER, V.C.J., and HODGES, LAVENDER, SIMMS and HARGRAVE, JJ., concur.

ALMA WILSON, C.J., and OPALA and WATT, JJ., concur in result.

OPALA, Justice, with whom ALMA WILSON, Chief Justice, joins, concurring in result.

The court upholds—as free from state constitutional taint—a contractual provision which calls for the agreement's signatories to settle through arbitration *all* disputes incidental to the contract's performance. The court reasons the Uniform Arbitration Act, 15 O.S.1991 § 801 *et seq.*,[1] authorizes the parties to make a *promissory waiver* of their constitutional right of access to the courts.[2] Today's pronouncement—rested on a construction of Art. 23, § 8, Okl. Const.,[3] considered in conjunction with Art. 2, § 6, Okl. Const.[4]—disregards the plain language of the § 8 infirmity-dealing text. A promise to give up a constitutional right *not yet in existence* is clearly within the § 8 interdiction. A party's promise to submit *future* contractual disputes to arbitration operates to relinquish constitutionally safeguarded access to the courts for application of orderly forensic process.[5] It is for this reason that the promise here in suit falls within the class of obligations made inefficacious by § 8.

While concurring in today's result, *I recede from the court's entire pronouncement.* This I must do because (1) Oklahoma's fundamental law [6] condemns *contractual* provisions that exact *promissory waivers* of constitutionally safeguarded access to the courts; [7]

1. The pertinent terms of 15 O.S.1991 § 802 are:
"A. This act shall apply to a written agreement to submit any *existing* controversy to arbitration or a provision in a written contract to submit to arbitration any controversy *thereafter arising* between the parties. Such agreements are valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract...." [Emphasis mine.]

2. Today's pronouncement affords the promisor but one avenue of access to the courts—that of securing judicial vacation of the arbitrator's award. Grounds for vacating such awards are statutorily confined to "fraud, bias, excess of power, or unfair procedure." *See* 15 O.S.1991 § 812(A).

3. Okl. Const. Art. 23, § 8 provides:
"Any provision of a contract, express or implied, made by any person, by which any of the benefits of this Constitution is sought to be *waived*, shall be null and void." [Emphasis mine.]

4. The pertinent terms of Okl. Const. Art. 2, § 6, are:
"*The courts of justice of the State shall be open to every person,* and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

5. Today's construction of Art. 23, § 8—which sanctions executory promise-based waivers of constitutional rights—implicates a much broader range of contracts than just arbitration agreements. *See, e.g., Bank South v. Howard,* 264 Ga. 339, 444 S.E.2d 799 (1994). In *Howard* the question to be decided was whether a promise (in a loan-guaranty document) to waive a jury trial is enforceable when it is *disconnected* from a contract to arbitrate. The court refused to uphold, on state constitutional grounds, the guaran-

tor's waiver. *Id.* at 800. The Georgia constitution guarantees the right to a jury trial except when the parties fail to demand a jury or "where no issuable defense was filed." Ga. Const., 1983, Art. I, § 1, ¶ 11. The Georgia court realized that the *Howard* condemnation ran counter to its earlier imprimatur placed upon the predispute waiver of court access in an arbitration agreement. *Id.* at 800. It was nonetheless unwilling to harmonize the clearly perceived conflict, preferring to leave its resolution to the General Assembly.

6. For the pertinent terms of Okl. Const. Art. 23, § 8, see *supra* note 3.

7. In addition to the open-courts clause in Art. 2, § 6, Okl. Const., constitutionally safeguarded access to judicial institutions for resort to orderly forensic process may be drawn from:

The terms of Art. 2, § 7, Okl. Const., which are:
"No person shall be deprived of life, liberty, or property, without due process of law."
The pertinent terms of Art. 2, § 19, Okl. Const., which are:
"The right of trial by jury shall be and remain inviolate...."
The pertinent terms of Art. 5, § 46, Okl. Const., which provide:
"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

\*    \*    \*    \*    \*    \*

Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry, before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals....

\*    \*    \*    \*    \*    \*

For limitation of civil or criminal actions;

\*    \*    \*    \*    \*    \*

Providing for change of venue in civil and criminal cases."

(2) the prudential bar of restraint commands that today's principal issue—the state fundamental-law validity of a promise to arbitrate a yet-to-arise controversy—not be resolved in advance of strict necessity; and (3) since *U.S. jurisprudence* teaches that the Federal Arbitration Act[8] [FAA] is intended to *preempt* state law if the latter interferes with the enforceability of arbitration clauses in contracts "involving commerce",[9] the Supremacy Clause of the U.S. Constitution[10] commands that this court uphold the arbitration provision in suit and rest its decision on the FAA's mandate rather than on its answer to whether the arbitration promise passes the § 8 muster.[11]

## I

### ANATOMY OF LITIGATION

Rollings is the owner of an invention, covered by a U.S. patent, for the design of an industrial hot water heater. In 1991 Rollings and Thermodyne Industries, Inc. [Thermodyne] entered into a licensing agreement [the Agreement] which transferred the exclusive right to manufacture, market and sell industrial heaters using the patented design. Their Agreement[12] requires the signatories to arbitrate[13] *any* dispute—present or fu-

ture—that relates to the parties' contractual performance.

Concerned about Thermodyne's performance under the Agreement's terms, Rollings sought to have the district court declare the contract terminated. Thermodyne moved for the dispute's submission to *arbitration.* At nisi prius its motion met with an adverse ruling. The Court of Appeals reversed, holding that under Art. 23, § 8, Okl. Const., a *promise* to arbitrate a yet-to-arise controversy is *enforceable.*[14] We granted certiorari. Today's pronouncement reverses the trial court's decision for Rollings.

## II

### THE TERMS OF ART. 23, § 8 RENDER ABSOLUTELY VOID ROLLING'S EXECUTORY *EX CONTRACTU* WAIVER OF HIS CONSTITUTIONAL RIGHT OF ACCESS TO THE COURTS

#### A

The constitutional validity of Rollings' executory[15] *ex contractu* (promissory) waiver of his fundamental-law right of access to courts must be tested by giving the key language in Art. 23, § 8 its *commonly ac-*

---

The pertinence of the constitutional provisions set out in this note is discussed *infra,* section II(C).

**8.** 9 U.S.C. §§ 1 *et seq.*

**9.** *See* the pertinent terms of 9 U.S.C. § 2, which provide:

"A written provision in any ... contract evidencing a *transaction involving commerce* to settle by arbitration a controversy ... arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." [Emphasis mine.]

**10.** U.S. Const., Art. VI, cl. 2.

**11.** Although in its petition in error Thermodyne did not invoke the Federal Arbitration Act, it did press for its applicability at page 10 of the reply brief. For the rule that a timely-filed brief may supply a deficiency in the petition in error, see *Markwell v. Whinery's Real Estate, Inc.,* Okl., 869 P.2d 840, 843 (1994).

**12.** The licensing Agreement's terms provided in clause 7:

"Remedies. In the event of *any* dispute between the parties hereto relating to this Agreement, the parties hereby agree to arbitrate such dispute under the rules, regulations and guidelines of the American Arbitration Association." [Emphasis mine.]

**13.** Arbitration is an ancient and accepted institution for settling disputes. It has been recognized by the common law at least since the early thirteenth century. *See* Powell, *Settlement of Disputes by Arbitration in Fifteenth–Century England,* 2 LAW & HIST.REV. 21, 25 (1984).

**14.** For the pertinent language of Okl. Const. Art. 23, § 8, see *supra* note 3.

**15.** *"Executory"* connotes an obligation or performance which is *to be completed* in the future. *See Economy Roofing & Insulating Co. v. Zumaris,* 538 N.W.2d 641, 650 (Iowa 1995); *In re San Francisco Bay Exposition,* 50 F.Supp. 344, 346 (N.D.Cal.1943).

*cepted* and *nontechnical* meaning.[16] The text to be considered states:

> "Any provision of a *contract,* express or implied, made by any person, by which any of the benefits of this Constitution is sought to be *waived,* shall be null and void." [Emphasis mine.]

Oklahoma's extant jurisprudence defines *"waiver"* as the *intentional* relinquishment of *known* rights under circumstances showing that *when the rights were surrendered,* the waiving party *had knowledge* of its then existing rights and of the material facts upon which they depended.[17] The language of § 8 interdicts *only* contractual, *i.e.,* promise-based, *waivers* in the form of *a pledge to surrender state constitutional benefits that may in the future become one's due in the course of the parties' contractual dealings.*[18] It does not proscribe one's *in praesenti* relinquishment[19] of a fundamental-law right by a *juristic act.*[20]

Agreements to arbitrate *future* disputes cannot meet the § 8 standards. By these agreements waivers can *never* be *"knowingly"* or *"intelligently"* made *in advance.* Unless one is shown to have had full knowledge of all the material facts that establish one's right, an individual cannot be said to understand or appreciate the breadth of the applicable constitutional benefits being surrendered. No one may be held to have waived rights whose outer contours, in the setting in which they might arise, are still unknown.[21]

**B**

Recognized constitutional hermeneutics dictates that the words of Art. 23, § 8[22] be interpreted in conformity with their *ordinary* significance in the English language, *i.e.,* that they be given their *commonly accepted* and *nontechnical* meaning.[23] Fundamental-law provisions must be construed in a practical manner so that the plainly manifested intent of its drafters may be honored.[24]

**16.** For an extensive discussion of my position on the applicability of Art. 23, § 8 to arbitration agreements, see Wiegand, *Arbitration Clauses: The Good, the Bad, the Ugly,* 47 Okla.L.R. 627–36 (1994).

**17.** *Faulkenberry v. Kansas City So. Railway Co.,* Okl. 602 P.2d 203, 206 (1979). *See also Schneckloth v. Bustamonte,* 412 U.S. 218, 234–35, 93 S.Ct. 2041, 2051–52, 36 L.Ed.2d 854 (1973); *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). In *Schneckloth* the Court holds that while *knowledge* is *not* a prerequisite for a voluntary consent, it is essential to an effective *waiver* that is defined as an *intentional* relinquishment of a *known right or privilege.* 412 U.S. at 235, 93 S.Ct. at 2052.

**18.** *See Faulkenberry, supra* note 16 at 206–207; *Raines v. Independent School Dist. No. 6,* Okl., 796 P.2d 303, 305 (1990) (Opala, V.C.J., concurring).

**19.** My writing does not concern itself with relinquishment of access to the courts to arbitrate an *existing* dispute. *In praesenti* waivers are *not* contracts; they are not promissory. By their very definition they do not fall within the purview of Art. 23, § 8. *Stange v. United States,* 282 U.S. 270, 276, 51 S.Ct. 145, 147, 75 L.Ed. 335 (1931); *Bertelsen & Petersen Engineering Co. v. United States,* 60 F.2d 745, 747 (1st Cir.1932).

**20.** A *juristic act* is one designed to have a present legal effect. It is an act of a private individual directed to the origin, surrender or alteration of a right. *See Gates v. P.F. Collier, Inc.,* 378 F.2d

888, 896 (9th Cir.1967); *Evans v. Wilson,* 776 S.W.2d 939, 940 (Tenn.1989).

**21.** *Berman v. Fraternities Health & Accident Assn.,* 107 Me. 368, 78 A. 462, 464 (1910); *Enterprise Sheet Metal Works v. Schendel,* 55 Mont. 42, 173 P. 1059, 1061 (1918); *Danville Lumber & Mfg. Co. v. Gallivan Bldg. Co.,* 177 N.C. 103, 97 S.E. 718, 720 (1919); *Michigan Automobile Ins. Co. v. Van Buskirk,* 115 Ohio St. 598, 155 N.E. 186, 188 (1927).

**22.** For the language of Art. 23, § 8, see *supra* note 3.

**23.** *Campbell v. White,* Okl., 856 P.2d 255, 262 (1993); *Wade v. Brown,* Okl., 516 P.2d 526, 528 (1973); *Sharpe v. State ex rel. Oklahoma Bar Association,* Okl., 448 P.2d 301, 306 (1968); *State ex rel. Ogden v. Hunt,* Okl., 286 P.2d 1088 syls. 1, 2 (1955).

**24.** The drafters of Oklahoma's constitution doubtless were aware of the then-extant jurisprudence which taught that while a person can *waive* constitutional rights *in praesenti,* no one may *in advance* "barter away [by agreement] his life or his freedom or his substantial rights." *See Insurance Company v. Morse,* 87 U.S. (20 Wall.) 445, 451, 22 L.Ed. 365–368 (1874); *see also Hartford Fire Ins. Co. v. Hon,* 66 Neb. 555, 92 N.W. 746, 747 (1902); *Wortman v. Montana Cent. Ry. Co.,* 22 Mont. 266, 56 P. 316, 320–21 (1899); *Cupples v. Alamo Irr. & Mfg. Co.,* 7 Kan.App. 692, 51 P. 920 (1898); *Baltimore & O.R. Co. v. Stankard,* 56 Ohio St. 224, 46 N.E.

Fear of universal disapproval should not dissuade us today from giving § 8 its plainly intended meaning. Extant jurisprudence from elsewhere offers rich insight into what happens when fundamental law's plain and ordinary meaning is judicially ignored or attempted to be written out of existence. The U.S. Supreme Court's 1896 decision in Plessy v. Ferguson [25] serves as a most eloquent reminder. There the Court, perceiving shocking consequences from an evenhanded exposition of the Equal Protection Clause, forged a separate-but-equal doctrine, which—though popular at the time—failed to pass muster scarcely six decades later when it was revisited in Brown v. Board of Education of Topeka, Shawnee County, Kan. [26]

I will not travel the road chosen in Plessy. The text of Art. 23, § 8 is to be interpreted without resort to technical fabrications of its language. The plainly manifested purpose *of the drafters* must be upheld. [27] If, as I divine, both management and labor vigorously support the concept of arbitration, regarding its benefits as an indispensable tool for expeditious and inexpensive settling of disputes, their objective *would be achieved with much greater security* through an amendment of § 8 which would explicitly validate predispute arbitration agreements.

It is to be doubted that judges of succeeding generations would be willing to view the meaning of the § 8 command as the court does today. A likelihood of tomorrow's less friendly response to the call for accommodation, not dissimilar from that in *Brown*, [28] is not to be discounted. Business and labor cannot rely for the badly needed security of their promises on today's *Plessy*-like bandaid solution.

### C

The court confines its decision to consideration of Art. 23, § 8 and Art. 2, § 6, Okl. Const., giving the erroneous impression that the two sections are the only fundamental-law provisions pertinent to the issue. *Not so.* A promise to submit a future dispute to arbitration operates to relinquish more than just general access to the courts. It serves to give up the promisor's constitutionally safeguarded mode of procedure that is embodied in Art. 2, § 6 (access to courts), Art. 2, § 7 (due process of law) and Art. 2, § 19 (right to trial by jury). Moreover, all these

---

577, 578–79 (1897); *Supreme Council of Order of Chosen Friends v. Forsinger*, 125 Ind. 52, 25 N.E. 129, 130 (1890); *Bauer v. Samson Lodge, No. 32, K. of P.*, 102 Ind. 262, 1 N.E. 571, 575 (1885).

See also R.L. Williams, THE CONSTITUTION OF OKLAHOMA pp 301–302 (1912), which ascribes as sources of Okl. Const. Art. 23, § 8, the following pertinent constitutional provisions:
Colo. Const. Art. 15, § 15 (1876):
"It shall be unlawful for any person, company or corporation to require of its employés, as a condition of their employment or otherwise, any contract or agreement whereby such person, company, or corporation shall be released or discharged from liability or responsibility on account of personal injuries ... and such contract shall be null and void."
Mont. Const. Art. 15, § 16 (1889):
"It shall be unlawful for any person, company or corporation to require of its employes, as a condition of their employment or otherwise, any contract or agreement whereby such person, company, or corporation shall be released or discharged from liability or responsibility on account of personal injuries ... and such contract shall be null and void."
Wyo. Const. Art. 10, § 4 (1889):

"No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employe waiving any right to recover damages for causing the death or injury of any employe shall be void."

**25.** *Plessy v. Ferguson*, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896).

**26.** 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

**27.** *Sharpe, supra* note 23 at 304; *Hines v. Winters*, Okl., 320 P.2d 1114, 1118 (1958). *See also Latting v. Cordell*, 197 Okl. 369, 172 P.2d 397 syl. 1 (1946). There the court held:

"The object of construction, applied to a constitution, is to give effect to the *intent of the framers, and of the people adopting it.* This intent is to be found in the instrument itself; and when the text of a constitutional provision is *not ambiguous*, the courts ... are not at liberty to search for its meaning beyond the instrument." [Emphasis mine.]

**28.** *See Brown, supra* note 26.

procedural strictures stand guaranteed by Art. 5, § 46.[29]

By mandating uniformity of procedure, the terms of Art. 5, § 46 command that all citizens of the state shall have equal access to legal institutions for application of the generally applicable ordinary forensic process. Contract litigants comprise but a single class. By singling out persons who have executed predispute arbitration agreements for use of a deciding mechanism different from trial, a dichotomous division is created—contrary to Art. 5, § 46—for a single class of litigating parties. While in the context of an *existing dispute*, litigants may waive the § 46 protection, with respect to *future disputes*, such waivers offend the provisions of Art. 23, § 8.

## III

## THE PRUDENTIAL BAR OF RESTRAINT COMMANDS THAT THE STATE CONSTITUTIONAL ISSUE BEFORE US NOT BE RESOLVED IN ADVANCE OF STRICT NECESSITY

The Court of Appeals erroneously concluded that it needed to reach Rollings' constitutional challenge to Oklahoma's Uniform Arbitration Act[30] to decide the principal issue in suit. A *well-settled* rule of federal law, discussed below,[31] absolutely controls the arbitrability of the Rollings/Thermodyne dispute. When, as here, the legal relief sought clearly may be afforded upon *alternative* grounds, consideration of constitutional challenges is inappropriate under the self-erected and time-honored "prudential bar" of restraint.[32]

## IV

## THE FEDERAL ARBITRATION ACT PRE-EMPTS STATE LAW WHICH GOVERNS ARBITRATION CLAUSES IN CONTRACTS *INVOLVING COMMERCE*

*Settled* federal jurisprudence[33] teaches that when a contract (1) *involves commerce*[34] and (2) *calls for arbitration,* the *arbitrability* of both present and future disputes arising under its terms is to be determined *solely* by the Federal Arbitration Act.[35] The Rollings/Thermodyne contract clearly calls for arbitration and its object—the manufacture and sale of industrial heaters—plainly *involves* commerce when it is tested by the controlling federal-law norms. In short, the arbitration agreement in suit clearly is *enforceable* within the purview of the FAA.

Once a transaction in litigation is found to meet the FAA standards, *i.e.,* "involve" commerce, state courts *cannot apply state law* that would invalidate its arbitration agree-

---

29. For the pertinent terms of Art. 5, § 46, see *supra* note 7. Predispute arbitration agreements violate the uniformity of procedure mandated by § 46 because § 8 will not allow their promisees to benefit from a different procedural regime than that which is generally accorded.

30. 15 O.S.1991 §§ 801 *et seq.*

31. *See* section IV, *infra.*

32. *I.N.S. v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). *See also Smith v. Westinghouse Elec. Corp.,* Okl., 732 P.2d 466, 467 n. 3 (1987); *Schwartz v. Diehl,* Okl., 568 P.2d 280, 283 (1977); *Dablemont v. State Department of Public Safety,* Okl., 543 P.2d 563, 564 (1975).

33. *Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. ——, ——, 115 S.Ct. 834, 838–40, 130 L.Ed.2d 753 (1995); *Perry v. Thomas,* 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987); *Southland v. Keating,* 465 U.S. 1, 15–16, 104 S.Ct. 852, 860–61, 79 L.Ed.2d 1 (1984).

34. *See Allied–Bruce, supra* note 33, where the Court holds that in its FAA meaning the word "involves" is *broader* than the often-found words of art "in commerce" and is "indeed the functional equivalent of 'affecting'." 513 U.S. at ——, 115 S.Ct. at 839–40. The Court describes the Act's [FAA] reach as coextensive with that of the Commerce Clause. *Southland, supra* note 33, 465 U.S. at 14–15, 104 S.Ct. at 860; *Perry, supra* note 33, 482 U.S. at 490, 107 S.Ct. at 2525. The test for determining whether a contract calling for arbitration falls within the FAA's purview is "[does] the 'transaction' *in fact* involve interstate commerce." *Allied–Bruce, supra* note 33, 513 U.S. at ——, 115 S.Ct. at 842. *It is not even necessary* that the *parties contemplated* an interstate commerce connection. *Id.* at 513 U.S. ——, 115 S.Ct. at 843.

35. 9 U.S.C. §§ 1 *et seq. See supra* note 9 for the applicable provisions of the FAA.

ment.[36]  In Mastrobuono v. Shearson Lehman Hutton [37] the Court explained:

> "[T]he FAA not only 'declared a national policy favoring arbitration,' but also *'withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration'*." [Emphasis mine.] [Citing Southland v. Keating.[38]]

Settled federal jurisprudence absolutely commands that the provisions of Art. 23, § 8—a state constitutional antiarbitration hurdle—yield to the provisions of the FAA.[39]

## V

## SUMMARY

Were I called upon to measure today the validity of the arbitration clause in the Rollings/Thermodyne Agreement by the state constitution's standards, my opinion would declare it violative of Art. 23, § 8. Rollings' promise to arbitrate is an impermissible executory waiver of his constitutionally safeguarded access to the courts. The text of § 8 explicitly prohibits promise-based waivers of fundamental-law rights.[40]

The U.S. Constitution's Supremacy Clause must control the resolution of the dispositive issue tendered by this cause. U.S. jurisprudence [41] unequivocally holds that a contract, which (1) *involves commerce* and (2) *contains a promise for arbitration* of disputes to arise under its terms, is governed by federal law which controls over *any* state-law infirmity drawn from the State's antiarbitration policy. The prudential bar of restraint demands that when, as here, legal relief clearly is afforda-

ble upon alternate grounds—which rest upon a *firmly established* principle of federal law—*consideration of an unsettled state constitutional question would be inappropriate.* The Rollings/Thermodyne contract is arbitrable under the provisions of the Federal Arbitration Act and the jurisprudence that governs that Act's outer reach.

I hence concur in the result but recede from today's *Plessy*-like *escape* from linguistic reality and from historicity revealed, if not indeed dictated, by the Populist roots of this State's fundamental-law charter.[42]

---

**36.**  *Allied–Bruce Terminix, supra* note 33, 513 U.S. at ——, 115 S.Ct. at 842.

**37.**  513 U.S. at ——, ——, 115 S.Ct. 1212, 1215–16, 131 L.Ed.2d 76 (1995).

**38.**  *See Southland, supra* note 33, 465 U.S. at 10; 104 S.Ct. at 858.

**39.**  The U.S. Supreme Court's FAA jurisprudence is binding on us even though it has been severely criticized by several justices of that Court as according the Act too broad a compass, one that goes far beyond any discernible congressional intent.  *See Allied–Bruce Terminix, supra* note 33,

513 U.S. at ——, 115 S.Ct. at 844 (O'Connor, J., dissenting).

**40.**  *Massey v. Farmers Ins. Group*, Okl., 837 P.2d 880, 890 (1992) (Opala, C.J., concurring in result);  *Raines, supra* note 18 at 304–305 (Opala, V.C.J., concurring);  *Dean Witter Reynolds, Inc. v. Shear*, Okl., 796 P.2d 296, 298 (1990);  *Long v. DeGeer*, Okl., 753 P.2d 1327, 1330 (1988) (Opala, J., concurring).

**41.**  *See supra* note 33.

**42.**  Oklahoma's constitution is steeped in Populist philosophy.  *See* D. GOBLE, PROGRESSIVE OKLAHOMA 156–58 (1980); J.C. MILLIGAN, OKLAHOMA. A REGIONAL HISTORY 148–51 (1985).